# EXHIBIT 1

Civil Actions

## Case Summary

**Case No. 2026-CAB-004615**

| | | |
|---|---|---|
| **Philip Moeller v. Blockratize, Inc et al.** | § | Location: **Civil Actions** |
| | § | Judicial Officer: **Okun, Robert D** |
| | § | Filed on: **07/02/2026** |

### Case Information

Case Type: Statutory Claim
Case Status: **07/02/2026 Open**

### Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2026-CAB-004615 |
| Court | Civil Actions |
| Date Assigned | 07/07/2026 |
| Judicial Officer | Okun, Robert D |

**Previous Case Assignments**

| | |
|---|---|
| Case Number | 2026-CAB-004615 |
| Court | Civil Actions |
| Date Assigned | 07/02/2026 |
| Reason | Judge Assigned |

### Party Information

| | | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | **Moeller, Philip**<br>5106 Cathedral AVE Northwest<br>Washington, DC 20016 | **Ciolko, Edward W**<br>***Retained***<br>212-443-2993(W)<br>1280 Tressler Drive<br>Fort Washington, PA 19034<br>edward.ciolko@sterlingtonlaw.com |
| **Defendant** | **Adventure One QSS, Inc**<br>*Doing Business As* Polymarket<br>1280 Lexington Avenue, Suite 1448<br>New York, NY 10028 | **Keller, Nicolas Giles**<br>***Retained***<br>212-849-7100(F)<br>212-849-7000(W)<br>295 5th Avenue, 9th Floor<br>New York, NY 10016<br>nicolaskeller@quinnemanuel.com |
| | **Blockratize, Inc**<br>*Doing Business As* Polymarket | **Keller, Nicolas Giles**<br>***Retained***<br>212-849-7100(F)<br>212-849-7000(W)<br>295 5th Avenue, 9th Floor<br>New York, NY 10016<br>nicolaskeller@quinnemanuel.com |
| | **QCX LLC**<br>*Doing Business As* Polymarket US<br>7251 West Palmetto Park RD<br>STE 102<br>Boca Raton, FL 33433 | **Keller, Nicolas Giles**<br>***Retained***<br>212-849-7100(F)<br>212-849-7000(W)<br>295 5th Avenue, 9th Floor<br>New York, NY 10016<br>nicolaskeller@quinnemanuel.com |

## Case Summary

**Case No. 2026-CAB-004615**

### Events and Orders of the Court

07/02/2026
Complaint eFiled
*No summons and information sheet attached*
Docketed on: 07/07/2026
Filed by: Plaintiff Moeller, Philip

07/07/2026
Initial Order [Remote] (Judicial Officer: Okun, Robert D)

07/07/2026 Notice

07/07/2026
Initial Summons Requested as to
*Block Ratize, Inc*
Docketed on: 07/08/2026
Party: Plaintiff Moeller, Philip

07/07/2026
Initial Summons Requested as to
*Adventure One QSS, Inc.*
Docketed on: 07/08/2026
Party: Plaintiff Moeller, Philip

07/07/2026
Initial Summons Requested as to
*QCX LLC*
Docketed on: 07/08/2026
Party: Plaintiff Moeller, Philip

07/08/2026
Notice

08/05/2026
Notice to Court (Praecipe) to Enter Appearance Filed
Docketed On: 08/06/2026
Filed By: Defendant Adventure One QSS, Inc;
Defendant Blockratize, Inc;
Defendant QCX LLC

08/05/2026
Notice to Court (Praecipe) to Enter Appearance Filed
*Notice Of Appearance*
Docketed On: 08/06/2026
Filed By: Defendant Adventure One QSS, Inc;
Defendant Blockratize, Inc;
Defendant QCX LLC

08/10/2026
Motion to Extend Filed (Judicial Officer: Okun, Robert D)
*Defendants' Unopposed Motion to Extend Time to Respond to the Complaint*
Docketed on: 08/11/2026
Filed by: Defendant Blockratize, Inc

08/12/2026
Order Granting Motion (Judicial Officer: Okun, Robert D)
*Defendants' Unopposed Motion to Extend Time to Respond to the Complaint. Eserved. LR.*
Signed on: 08/12/2026

08/12/2026 Notice
*of Order Granting Defendants' Unopposed Motion to Extend Time to Respond to Complaint*

08/12/2026
Notice to Court (Praecipe) Filed
*Information Sheet*
Docketed On: 08/13/2026
Filed By: Plaintiff Moeller, Philip

## Case Summary

**Case No. 2026-CAB-004615**

08/14/2026
Notice to Court (Praecipe) Filed
*Notice of Filing of Related Complaint*
Docketed On: 08/17/2026
Filed By: Plaintiff Moeller, Philip

08/19/2026
Rule 7.1 Disclosure Statement Filed
*Defendant Adventure One QSS, Inc.'s Rule 7.1 Disclosure Statement*
Docketed on: 08/20/2026
Filed by: Defendant Adventure One QSS, Inc

08/19/2026
Rule 7.1 Disclosure Statement Filed
*Defendant Blockratize, Inc.'s Rule 7.1 Disclosure Statement*
Docketed on: 08/20/2026
Filed by: Defendant Blockratize, Inc

08/19/2026
Rule 7.1 Disclosure Statement Filed
*Defendant QCX LLC's Rule 7.1 Disclosure Statement*
Docketed on: 08/20/2026
Filed by: Defendant QCX LLC

11/20/2026
**Remote Initial Scheduling Conference** (9:30 AM) (Judicial Officer: Okun, Robert D)
10/02/2026 Continued to 11/20/2026 - Request/Consent of Parties - Moeller, Philip; Blockratize, Inc; Adventure One QSS, Inc; QCX LLC

---

### Financial Information

---

| | | | |
|---|---|---|---|
| | **Defendant** Blockratize, Inc | | |
| | Total Financial Assessment | | 20.00 |
| | Total Payments and Credits | | 20.00 |
| | **Balance Due as of 08/25/2026** | | **0.00** |
| 08/10/2026 | Transaction Assessment | | 20.00 |
| 08/11/2026 | eFile Payment | Receipt # DC-248184 | (20.00) |
| | **Plaintiff** Moeller, Philip | | |
| | Total Financial Assessment | | 120.00 |
| | Total Payments and Credits | | 120.00 |
| | **Balance Due as of 08/25/2026** | | **0.00** |
| 07/02/2026 | Transaction Assessment | | 120.00 |
| 07/02/2026 | eFile Payment | Receipt # DC-239900 | (120.00) |

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| **PHILIP MOELLER,**<br>5106 Cathedral Avenue NW<br>Washington, DC, 20016<br><br>*on behalf of himself and all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>**BLOCKRATIZE, INC. d/b/a POLYMARKET,**<br>New York, New York<br>**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**<br>1280 Lexington Avenue, Suite 1448,<br>New York, New York 10028<br>**QCX LLC d/b/a POLYMARKET US,**<br>7251 W. Palmetto Park Road, Suite 102,<br>Boca Raton, Florida 33433<br><br>*Defendants.* | **Case No.** 2026-CAB-004615<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Philip Moeller, on behalf of himself and a class of those similarly situated, brings this Class Action Complaint against Defendants Blockratize, Inc. d/b/a Polymarket ("Blockratize"), Adventure One QSS, Inc. d/b/a Polymarket ("Adventure One"), and QCX LLC d/b/a Polymarket US ("Polymarket US") (collectively, "Polymarket" or "Defendants") for violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* The allegations below are based on Plaintiff's personal knowledge as to Plaintiff's individual experiences, the investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1. Polymarket runs a prediction market—a platform where people bet real money on whether some future event will happen. For most of its existence it has been forbidden to offer that platform to anyone in the United States. In 2022 it settled federal charges that it was operating an illegal, unregistered exchange, paid a penalty, and agreed to stop serving American customers. It has been barred from offering that platform in the United States ever since—a bar that remained in place throughout the conduct described below, even after Polymarket later launched a separate, regulated United States product.[1]

2. A company that cannot lawfully sell to Americans cannot lawfully advertise to them either. So Polymarket did it without saying so. It paid young social-media creators to film themselves betting on the platform and winning—constantly and enormously—and to post those videos to American audiences as if they were ordinary users sharing good news. The videos worked, collectively drawing more than 140 million views.[2]

3. The bets were not real. The creators were not winning money on Polymarket, because they were not placing bets on Polymarket at all. They were placing them on counterfeit versions of the site—copies Polymarket itself built and ran on its own internal development servers, identical to the real platform but for a stray detail in the address bar, where a trade could be staged and an outcome could be made to come out however the video needed. One creator filmed a $1,000 bet that the President would say "fake news," with the order ticket promising a

[1] Press Release, Commodity Futures Trading Comm'n, No. 8478-22 (Jan. 3, 2022), https://www.cftc.gov/PressRoom/PressReleases/8478-22 (last visited June 24, 2026).

[2] Katherine Long et al., *They Looked Like They Were Getting Rich on Polymarket—but None of It Was Real*, WALL ST. J. (June 20, 2026), https://www.wsj.com/business/media/polymarket-social-media-bets-prediction-market-441cdeb5 (last visited June 24, 2026).

$95,238 payout; the page he was betting on was not polymarket.com but a Polymarket engineering preview build.

4. The winnings were invented the same way the bets were. In roughly one in ten of the videos, the creators went past staging the trade and staged the payoff too, splicing in old footage and fabricated headlines to make a loss look like a jackpot.[3]

5. The campaign was never deliberately disclosed to the public. Polymarket told the creators not to reveal they were paid, and most never did until reporters started asking. The creators worked from scripts the company supplied, calling their fictional winnings "free money" and "free bread." To push the videos further, Polymarket worked through a marketing firm that paid an army of users to repost the footage from accounts scrubbed of any tie to Polymarket, under instructions that every post look "personal and organic"— and that paid those reposters only when most of their audience was in the United States, the one country Polymarket was barred from serving.[4]

6. This was not a rogue contractor's improvisation. It was Polymarket's own campaign, run from the top and paid for personally by one of its most senior officers. Polymarket's chief marketing officer used a personal payment account to funnel money to the creators who carried it out. A company does not build a pixel-for-pixel forgery of its own website, script the lies its creators tell, and have an officer pay for it out of a personal account unless the deception is the plan.[5]

---

[3] Caitlin Ostroff et al., *We Investigated Polymarket's Deceptive Marketing Campaign. Here's What We Found.*, WALL ST. J. (June 22, 2026), https://www.wsj.com/business/media/we-investigated-polymarkets-deceptive-marketing-campaign-heres-what-we-found-51169858 (last visited June 24, 2026).

[4] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

[5] Jason Beeferman et al., *'Unbelievable how accurate': How paid influencers hype Polymarket's odds*, POLITICO (June 5, 2026), https://www.politico.com/news/2026/06/05/polymarket-paid-political-influencers-00932789 (last visited June 24, 2026).

7. Through its staged trades, its fabricated winnings, and its concealed paid promotion, Polymarket misrepresented and omitted material facts with a tendency to mislead, in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*. Plaintiff brings this action on behalf of himself and all similarly situated District of Columbia consumers to hold Polymarket accountable and to obtain the relief the CPPA provides.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction pursuant to D.C. Code § 11-921 *et seq.* and the CPPA, D.C. Code § 28-3901 *et seq.*, because the claims are brought under the laws of the District of Columbia.

9. This Court has personal jurisdiction over Defendants pursuant to D.C. Code § 13-423 because each Defendant transacts business in the District of Columbia and commits tortious acts in the District of Columbia as described in this Complaint.

**PARTIES**

10. Plaintiff Philip Moeller is a natural person and a resident and citizen of Washington, D.C.

11. Defendant Blockratize, Inc. d/b/a Polymarket is a Delaware corporation headquartered in New York, New York. Blockratize has operated the Polymarket prediction-market platform since 2020, is the sole owner of QCX LLC, and directed and funded the marketing campaign described in this Complaint.

12. Defendant Adventure One QSS, Inc. d/b/a Polymarket is a corporation organized under the laws of Panama with a principal place of business at 1280 Lexington Avenue, Suite 1448, New York, New York 10028. Adventure One owns and/or operates the offshore Polymarket

platform, which is not regulated by the CFTC and which much of the campaign described in this Complaint promoted to United States users.

13. Defendant QCX LLC d/b/a Polymarket US is a Delaware limited liability company with a principal place of business at 7251 W. Palmetto Park Road, Suite 102, Boca Raton, Florida 33433. It is the CFTC-licensed exchange that Blockratize acquired in 2025, through which Polymarket now offers its platform to users in the United States, including the District of Columbia.

## COMMON FACTUAL ALLEGATIONS

### A. Polymarket and Its Prediction-Market Platform

14. Polymarket is one of the largest online prediction markets in the world, a platform where ordinary people wager real money on the outcomes of future events: which candidate will win an election, whether a public figure will say a particular word, how a war or a ballgame or an economic report will turn out. The company tells the public that its markets reflect collective belief about the future, and that anyone who reads the world a little better than the crowd can profit by doing so.

15. The reality is otherwise. More than 70% of Polymarket's users lose money, while the profits run the other way: roughly 67% of all gains on the platform accrue to just 0.1% of accounts—a small circle of sophisticated traders, often using data-driven algorithmic strategies, who move the prices everyone else bets against.[6]

---

[6] Neil Mehta et al., *Why Almost Everyone Loses—Except a Few Sharks—on Prediction Markets*, WALL ST. J. (May 3, 2026), https://www.wsj.com/finance/investing/polymarket-kalshi-betting-profits-prediction-markets-eb23ac11 (last visited June 24, 2026).

### B. Polymarket Was Barred From the U.S. Market But Built Its American Audience Anyway

16. Polymarket has not been free to offer its platform to American users for most of its existence. In January 2022, the Commodity Futures Trading Commission found that Polymarket had been operating an illegal, unregistered trading facility since 2020. Polymarket paid a civil penalty, agreed to wind down the noncompliant markets, and agreed to stop offering its platform to customers in the United States.[7]

17. The platform did not disappear from the United States. It moved offshore and kept running, and American users continued to reach it as they always had — by using a virtual private network to disguise their location. The company that had agreed to keep Americans off its platform went on operating a platform that Americans kept using.[8]

18. In 2025, Polymarket acquired a federally licensed exchange and clearinghouse and, through that acquisition, obtained authorization to operate a regulated platform for United States users. It launched that platform late in 2025. Even then, the regulated platform drew only a fraction of the trading that ran through the offshore site.[9]

19. A company forbidden to sell its product in the United States cannot grow here by ordinary means; it cannot lawfully advertise what it is not permitted to offer. So Polymarket did the next best thing. It manufactured the appearance that Americans were already flocking to the platform and getting rich there, so that more Americans would follow.

---

[7] Press Release, Commodity Futures Trading Comm'n, No. 8478-22, *supra*.

[8] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

[9] Press Release, Polymarket, *Polymarket Acquires CFTC-Licensed Exchange and Clearinghouse QCEX for $112 Million*, PR NEWSWIRE (July 21, 2025), https://www.prnewswire.com/news-releases/polymarket-acquires-cftc-licensed-exchange-and-clearinghouse-qcex-for-112-million-302509626.html (last visited June 24, 2026); Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

### C. Polymarket Orchestrated, Concealed, and Personally Funded the Campaign

20. Polymarket did not advertise its platform in its own name. Instead, it recruited a roster of social-media creators, most of them college-age, and paid them to post videos of themselves trading on Polymarket and winning money—videos built to look like the spontaneous enthusiasm of ordinary users who had stumbled onto easy money. Across the videos, the message was constant: betting on Polymarket was easy, the winnings were real, and anyone watching could do the same.[10]

21. This was a managed operation, not a collection of independent endorsements. Polymarket ran the campaign through a marketing firm, Virality, that recruited the creators, supplied them with bullet-point scripts telling them what to say, and coordinated the effort. Creators sent their finished videos to Polymarket for review before posting, and when a video was unconvincing or showed signs of being staged, it was sent back to be reshot. The scripts gave the creators their lines: they were to call their fabricated winnings "free money," "free bread," and "just free."[11]

22. The campaign was engineered to spread. Polymarket worked through Virality to manage an army of social-media users—"clippers"—who reposted the creators' videos from accounts that concealed any tie to Polymarket, manufacturing the appearance of organic, widespread enthusiasm. Virality paid these clippers only when at least sixty percent of their audience was in the United States—the one market Polymarket was barred from serving. So aimed, the videos reached more than 140 million views across TikTok, Instagram, and YouTube.[12]

---

[10] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

[11] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*; Ostroff et al., *We Investigated Polymarket's Deceptive Marketing Campaign*, WALL ST. J., *supra*.

[12] *Id.*

23. The campaign was not the improvisation of an outside contractor. It was Polymarket's own, directed and paid for at the highest levels of the company. The creators who produced the videos were paid for their work, and Polymarket's chief marketing officer, Matthew Modabber, used a personal payment account—a personal PayPal account registered to a side business he co-founded—to send money to them. Through that account, Modabber moved more than $2.5 million to over 800 recipients during a fourteen-month span. That an officer of the company financed the operation personally, out of his own account, confirms that the deception was Polymarket's own: known to it, directed by it, and built into the plan. [13]

### D. Polymarket Staged the Bets on Counterfeit Copies of Its Own Website

24. The trades in the videos were not real. The creators were not placing bets on Polymarket, because the sites they were betting on were not Polymarket. They were counterfeit copies—sites Polymarket itself built and ran on its own development servers, identical to the real platform on their face, where a trade could be staged and an outcome made to appear however the video required.

25. Figures 1 and 2 together capture one such staged trade. A creator films a $1,000 bet that the President will say "fake news," and the page shows the order ticket, the price chart, a portfolio balance, and a promised payout of $95,238.10. Every visible element reads as Polymarket—except the web address at the top of the screen, which is not polymarket.com. It is a build running on a test network, not the live platform where real money trades—served from Polymarket's own engineering domain, polymarket.dev. The bet in the video was never placed on

[13] Beeferman et al., *supra*.

Polymarket. It was staged on a counterfeit that Polymarket built and ran separately on its own servers.[14]

**Figure 1**




[14] @predictionmarkets.stuff, TIKTOK (Feb. 10, 2026), https://www.tiktok.com/@predictionmarkets.stuff/video/7605383496323910934 (last visited June 25, 2026); Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

**Figure 2**




26. But the build in Figure 1 was not the only counterfeit. Upon information and belief, Polymarket also ran a copy of its site at a web address designed to be mistaken for the real one: poiymarket — the lowercase "l" in "polymarket" replaced by a capital "I," a substitution invisible at a glance in a browser's address bar. A viewer who glanced up at the address to check whether the site was genuine would see what appeared to read "polymarket" and be reassured. The address itself was the disguise. When reporters contacted Polymarket about the campaign, the "poiymarket" site was taken down.[15]

[15] Ostroff et al., *We Investigated Polymarket's Deceptive Marketing Campaign*, WALL ST. J., *supra*; Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

27. Other tells confirmed that the sites were fakes. In a video promoting Polymarket's regulated United States app, the markets on the imitation interface were labeled "2026 FIFA World Cup," while the genuine app labeled the same markets "26 World Cup."[16]

**E. Polymarket Fabricated the Winnings, Which Were in Reality Losses**

28. In a substantial share of the videos, the creators staged the outcome too—reacting to outdated footage or fabricated headlines that made a losing bet look like a windfall. Across the videos, creators appeared to win close to $900,000. Had those same bets actually been placed on Polymarket, they would not have produced winnings at all. They would have lost more than $166,000.[17]

29. Figures 3 and 4 demonstrate the technique. A creator places a $200 bet that the President will say "Toyota" during a particular week—a wager Polymarket's own market, displayed on the same screen, prices at a two-percent chance. The video then cuts to a celebration of a roughly $11,000 win. The platform itself had priced the outcome as a near-certain loss; the video presented it as a jackpot. The creator tagged the post #viralitypoly—the signature of Virality, the firm Polymarket used to run the campaign.[18]

---

[16] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.
[17] Ostroff et al., *We Investigated Polymarket's Deceptive Marketing Campaign*, WALL ST. J., *supra*.
[18] @david.los13, TIKTOK (Mar. 18, 2026), https://www.tiktok.com/@david.los13/video/7618555733507984653 (last visited June 25, 2026).

**Figure 3**


Ain'T No Way Bro
Polymarket
Search markets
Trending
New
Politics
Sports
Crypto
Tech
Culture
Will Trump say "Toyota" this week? (March 8)
bro put $200 on TRUMP to say TOYOTA
Yes
2% chance 2%
BRO WHAT WILL TRUMP
3
Add 1st
1
1
David Los · 3-18
Toyota?!?! #tjr #tjrtrades #polymarket #viralitypoly #usa #... more

**Figure 4**




30. In another video, a creator showed himself winning $100,000 on a bet that the President would say "McDonald's" during a given month. On the real Polymarket, more than fifty accounts wagered on that question, and every one of them lost. The word was never said.[19]

---

[19] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

### F. Polymarket Concealed That the Videos Were Paid Advertising

31. Polymarket directed the creators not to tell their audiences they were being paid. Many disclosed no connection to Polymarket at all, and began identifying themselves as Polymarket partners only after reporters started asking the company about the arrangement.[20]

32. The concealment was built into how the videos spread. To push the footage further, Virality paid an army of low-wage social-media users to repost it from sockpuppet accounts that hid any Polymarket affiliation. It would not pay reposters whose account names revealed a tie to Polymarket, and it instructed them to scrub the company's name from their profiles, so the videos spread from accounts built to look unaffiliated. Every post was to appear, in the firm's own instruction, "personal and organic."[21]

33. The effect, and the purpose, was that a viewer scrolling past one of these videos had no way to know it was an advertisement at all—let alone one Polymarket had scripted, reviewed, and paid for.

### G. Consumers Encountered the Campaign With No Way to See the Truth

34. To the people who saw them, the videos looked like ordinary social media: a real person, on a real platform, winning real money, sharing the news the way anyone might. The trades looked real because the imitation sites were near-perfect copies. The winnings looked real because the footage was edited to confirm them. The enthusiasm looked genuine because the payment was hidden and the affiliations concealed.

---

[20] Beeferman et al., *supra*; Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*.

[21] Long et al., *They Looked Like They Were Getting Rich on Polymarket*, WALL ST. J., *supra*; Ostroff et al., *We Investigated Polymarket's Deceptive Marketing Campaign*, WALL ST. J., *supra*.

35. Polymarket never told consumers otherwise. It did not disclose that the trades were staged, that the winnings were fabricated, that the creators were paid, or that the videos were a coordinated marketing operation built to bring viewers onto the platform. A consumer who came to Polymarket because of the videos arrived believing exactly what the videos were built to make them believe.

### H. Plaintiff's Experience

36. Plaintiff Philip Moeller is a resident of the District of Columbia. From around April to late May 2026, Plaintiff Moeller encountered Polymarket through the social-media videos described above, in which creators appeared to place bets on the platform and win money with ease.

37. Plaintiff Moeller believed the videos to be what they appeared to be: ordinary users sharing genuine experiences of winning real money on Polymarket. Plaintiff Moeller did not know, because Polymarket did not disclose, that the trades were staged on imitation websites, that the winnings were fabricated, or that the creators had been paid to post them.

38. Based on the impression the videos created, Plaintiff Moeller signed up for Polymarket on or around June 2026 to place bets on the platform. Plaintiff Moeller lost $50.00.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action on behalf of himself and the proposed class, defined as follows: All District of Columbia residents who signed up for and funded an account on Polymarket during the statute of limitations through the date a class is certified.

40. Excluded from the Class is Polymarket US, its parents, subsidiaries, affiliates, officers, and directors; any entity in which Polymarket US has a controlling interest; all potential

Class members who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation as well as their family members.

41. Numerosity. The Class is so large that joinder of all of its members would be impracticable. Polymarket's marketing campaign reached more than 140 million views across social-media platforms and was directed at users throughout the United States, including District of Columbia residents. There are likely thousands of Class members. The precise number of members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

42. Commonality. Polymarket has acted on grounds that apply equally to all members of the Class. Numerous common issues of law and fact exist, including:

a. Whether the trades depicted in Polymarket's marketing videos were staged on imitation websites rather than placed on Polymarket;

b. Whether the winnings depicted in Polymarket's marketing videos were fabricated;

c. Whether Polymarket failed to disclose that the creators in its videos were paid to produce them;

d. Whether Polymarket's presentation of paid, staged promotional videos as organic user content is false and misleading;

e. Whether Polymarket's marketing misrepresented the likelihood that ordinary users profit on the platform;

f. Whether Plaintiff and the Class Members were harmed by Polymarket's misleading practices;

g. Whether Plaintiff and the Class Members are entitled to treble damages, statutory damages, punitive damages, restitution, and/or injunctive relief; and

h. Whether Polymarket should be enjoined from continuing to make false representations about the experience of using its platform.

43. Predominance. The common issues predominate over individualized inquiries because Polymarket's liability turns on its uniform marketing campaign and the misrepresentations and omissions within it, which are common to all Class members.

44. Typicality. Plaintiff's claims are typical of those of all Class members. His claims arise from Polymarket's uniform practice of marketing its platform through staged trades, fabricated winnings, and undisclosed paid promotion, and are based on the same legal theories.

45. Adequacy. Plaintiff is an adequate class representative with no interests adverse to the Class. Polymarket has no defenses unique to Plaintiff. Plaintiff has retained competent, experienced class action counsel to represent the Class.

46. Superiority. A class action is superior to all other available methods for fair and efficient adjudication of this controversy. The damages suffered by individual Class members may be relatively small compared to the burden and expense of individual litigation. The uniform nature of Polymarket's misrepresentations means class-wide issues can be efficiently resolved in a single proceeding. Many Class members may be unaware they have legal recourse for the conduct alleged herein.

## COUNT I

**Violation of District of Columbia Consumer Protection Procedures Act ("CPPA")**
**D.C. Code § 28-3901, et seq.**
***(On behalf of Plaintiff and the Class)***

47. Plaintiff fully restates and incorporates all preceding paragraphs as if set forth herein.

48. Plaintiff brings this claim on his own behalf and on behalf of members of the Class.

49. The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services purchased or received in the District of Columbia. D.C. Code § 28-3901(c).

50. Access to Polymarket's prediction-market platform is a consumer service used for personal purposes. Each Defendant, in the ordinary course of business, supplies consumer services and is therefore a merchant under the CPPA. D.C. Code § 28-3901(a)(3). Polymarket's users are consumers under the CPPA. D.C. Code § 28-3901(a)(2). The practices described herein are "trade practices" under D.C. Code § 28-3901(a)(6).

51. The CPPA makes it illegal to, among other things:

a. Represent that goods or services have characteristics, uses, or benefits that they do not have (D.C. Code § 28-3904(a));

b. Represent that a person has a sponsorship, approval, status, affiliation, certification, or connection that the person does not have (D.C. Code § 28-3904(b));

c. Misrepresent as to a material fact which has a tendency to mislead (D.C. Code § 28-3904(e));

d. Fail to state a material fact if such failure tends to mislead (D.C. Code § 28-3904(f));

e. Use innuendo or ambiguity as to a material fact, which has a tendency to mislead (D.C. Code § 28-3904(f-1)); and

f. Advertise or offer goods or services without the intent to sell them as advertised or offered (D.C. Code § 28-3904(h)).

52. A CPPA violation does not require proof that any consumer relied on the challenged practice. The statute prohibits an "unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." D.C. Code § 28-3904.

53. Polymarket violated D.C. Code § 28-3904(a) by representing, through its marketing campaign, that its platform has characteristics and benefits it does not have—namely, that ordinary users readily win money on Polymarket—when in fact: (i) the trades depicted in the videos were staged on imitation websites and were never placed on Polymarket; (ii) the winnings depicted were fabricated, and identical bets placed on Polymarket would have lost money; and (iii) more than 70% of actual Polymarket users lose money, with roughly 67% of the platform's profits concentrated among the top 0.1% of accounts.

54. Polymarket violated D.C. Code § 28-3904(e) by misrepresenting material facts with a tendency to mislead, including: (i) presenting creators as placing real bets on Polymarket when the trades were staged on imitation copies of the website; (ii) presenting creators as having won the sums depicted when those winnings were fabricated through outdated footage and false headlines; and (iii) presenting the creators as ordinary users sharing genuine experiences when they were paid promoters working from scripts.

55. Polymarket violated D.C. Code § 28-3904(b) by representing that the creators had a status and connection they did not have—that of ordinary, independent users with no relationship to Polymarket—when in fact they were paid promoters working from Polymarket's scripts, directed not to disclose the relationship.

56. Polymarket violated D.C. Code § 28-3904(f) by failing to state material facts that tended to mislead, including: (i) that the trades in the videos were staged on imitation websites rather than placed on Polymarket; (ii) that the winnings depicted were fabricated; (iii) that the

creators were paid to produce the videos; and (iv) that the videos were a coordinated marketing campaign rather than spontaneous, independent user content.

57. Polymarket violated D.C. Code § 28-3904(f-1) by using innuendo and ambiguity as to a material fact with a tendency to mislead, including: (i) presenting paid, scripted, and staged promotional videos as the organic enthusiasm of independent users; (ii) directing creators to keep their videos "personal and organic" so they would not read as advertising; and (iii) reposting the videos through accounts engineered to conceal any affiliation with Polymarket.

58. Polymarket violated D.C. Code § 28-3904(h) by advertising and offering the opportunity to bet on its prediction-market platform without the intent to sell that service as advertised or offered. Polymarket advertised the opportunity as one in which ordinary users place real bets and win real money, but built counterfeit copies of its own website—including a test build served from its own engineering domain—to stage bets that were never placed and winnings that never occurred. That Polymarket constructed these counterfeits in advance is evidence that, at the time it advertised the service, it intended to deliver something other than what it advertised.

59. Polymarket's deceptive practices were directed and funded by Polymarket itself. Polymarket's chief marketing officer, Matthew Modabber, used a personal payment account to pay the creators who carried out the campaign, confirming that the misrepresentations, omissions, and concealment alleged above were Polymarket's own conduct.

60. The misrepresentations and omissions described herein are material. A reasonable consumer deciding whether to sign up for and wager money on a prediction-market platform would attach importance to: (i) whether the winnings depicted in the platform's marketing were real; (ii) whether the people promoting the platform were paid to do so; and (iii) whether ordinary users actually profit on the platform or instead overwhelmingly lose. Polymarket itself treats the

appearance of easy winnings as material, as demonstrated by a marketing campaign built around depictions of ordinary users winning money.

61. Plaintiff and the Class were harmed by Polymarket's misleading practices. They signed up for and funded accounts on Polymarket based on the reasonable belief that ordinary users win money on the platform. Had Plaintiff and the Class known the truth, they would not have signed up for or deposited money on Polymarket, or would have done so on different terms.

62. Pursuant to D.C. Code § 28-3905(k), Plaintiff and the Class are entitled to treble damages, statutory damages, punitive damages, reasonable attorneys' fees, injunctive relief, and any other relief the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and the Class as follows:

a. Certifying the proposed Class, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel;

b. Awarding declaratory relief as requested herein;

c. Awarding restitution and reimbursement of all amounts lost by Plaintiff and Class members as a result of the wrongs alleged herein, in an amount to be determined at trial;

d. Compelling disgorgement of all ill-gotten gains derived by Polymarket from its misconduct;

e. Awarding compensatory, treble, statutory, punitive, and exemplary damages as allowed by law, including pursuant to D.C. Code § 28-3905(k)(2);

f. Imposing a permanent injunction requiring Polymarket to cease its deceptive marketing practices, including the use of staged trades, fabricated winnings, and undisclosed paid promotion, and to accurately represent the experience of using its platform;

g. Awarding pre-judgment interest at the maximum rate permitted by law;

h. Awarding costs and reasonable attorneys' fees pursuant to D.C. Code § 28-3905(k)(2); and

i. Awarding such other and further relief as this Court deems just and proper.

Dated: July 2, 2026

Respectfully submitted,

*/s/ <u>Edward Ciolko</u>*

Edward W. Ciolko (Bar No. 985110)
Julian Jiggetts (Bar No. 1739066)
Jennifer S. Czeisler (*pro hac vice* forthcoming)
**STERLINGTON, PLLC**
228 Park Avenue South, Suite 97956,
New York, New York 10003
Tel.: (212) 433-2993
edward.ciolko@sterlingtonlaw.com
julian.jiggetts@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com

**Superior Court of the District of Columbia**
**Civil Division - Civil Actions Branch**
**500 Indiana Ave NW, Room 5000, Washington DC 20001**
**202-879-1133 | www.dccourts.gov**

**Case Number:** 2026-CAB-004615

**Case Style:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

## INITIAL ORDER

| Initial Hearing Date: | Initial Hearing Time: | Courtroom Location: |
|---|---|---|
| Friday, 10/02/2026 | 9:30 AM | Remote Courtroom 518 |
| **Please see attached instructions for remote participation.** | | |
| Your case is assigned to Associate Judge Robert D Okun. | | |

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby ORDERED as follows:

1) This case is assigned to the judge and calendar designated above. All future filings in this case shall bear the calendar number and judge's name along with the case number in the caption.
2) Within 60 days of the filing of the complaint, plaintiff must file proof of service on each defendant of copies of the summons, the complaint, and this Initial Order. The court will dismiss the claims against any defendant for whom such proof of service has not been filed by this deadline, unless the court extended the time for service under Rule 4.
3) Within 21 days of service (unless otherwise provided in Rule 12), each defendant must respond to the complaint by filing an answer or other responsive pleading. The court may enter a default and a default judgment against any defendant who does not meet this deadline, unless the court extended the deadline under Rule 55(a).
4) At the time stated above, all counsel and unrepresented parties shall participate in a hearing to establish a schedule and discuss the possibilities of settlement. Counsel shall discuss with their clients before the hearing whether the clients are agreeable to binding or non-binding arbitration. This order is the only notice that parties and counsel will receive concerning this hearing.
5) If the date or time is inconvenient for any party or counsel, the Civil Actions Branch may continue the Conference once, with the consent of all parties, to either of the two succeeding days when the calendar is called. To reschedule the hearing, a party or lawyer may call the Branch at (202) 879-1133. Any such request must be made at least seven business days before the scheduled date. No other continuance will be granted except upon motion for good cause shown.
6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Milton C. Lee, Jr.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.

   Link: dccourts.webex.com/meet/ctb518

   Meeting ID: 129 685 3445

2) When you are ready, click "Join Meeting".
3) You will be placed in the lobby until the courtroom clerk gives you access to the hearing.

**Or to Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
2) Enter the Webex Meeting ID listed above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here https://www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch Clerk's Office at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

## ACCESSIBILITY AND LANGUAGE ACCESS

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call 202-879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office listed for your case. For more information, visit https://www.dccourts.gov/language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría de su caso.

Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎሙላቸው መጠየቅ ይችላሉ። የቃል ወይም የጽሑፍ ትርጓሜ ለመጠየቅ እባክዎን በመዝገብዎ የተዘረዘረውን የጸሀፊ ቢሮ (ክለርክ'ስ ኦፊስ) ያናግሩ። ለተጨማሪ መረጃ https://www.dccourts.gov/language-access ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

# Tips for Attending Remote Hearings - Civil Division

*Your court hearing may be held remotely. This means that you will participate by phone or by video conference instead of coming to the courthouse. Here are some tips on how to prepare.*

## How do I know if I have a remote hearing?

The Court will contact you to tell you that your hearing is remote. They may contact you by sending you an email, letter in the mail, or by calling you.

## How do I take part in a remote hearing?

The Court will give you step-by-step instructions on how to take part in the remote hearing.

If you lose your written notice, call the Civil Actions Clerk's Office for instructions at:

202-879-1133

## Is there anything that I should do before the day of the hearing?

- Let the court know immediately if you cannot join a hearing because you do not have a phone or computer.

  Civil Actions Clerk's Office: 202-879-1133

- You may want to contact an attorney for legal help.
- You can also find the list of legal services providers at www.dccourts.gov/services/represent-yourself by clicking on the link that says, "List of Legal Service Providers for Those Seeking an Attorney or Legal Advice".
- Evidence: if you want the judge to review photos or documents, ask the judge how to submit your evidence.
- Witnesses: tell the judge if you want a witness to testify at your hearing.
- Accommodations & Language Access: let the court know if you need an interpreter or other accommodation for your hearing.

## Tips for the Hearing

- Join the hearing a few minutes early!
- Charge your computer or phone and make sure you have enough minutes to join the call. Find a private and quiet space. If possible, be alone in a room during the hearing. Try to limit distractions as much as possible. If others are in the room with you, ask if they can be quiet during the hearing.
- Mute your microphone when you are not talking. Mute all sounds on your phone or computer.
- Say your name before you speak so the record is clear. Be prepared to identify your role in the hearing (e.g., observer, plaintiff, defendant, witness, etc.).
- Speak slowly and clearly so everyone hears what you are saying.
- Pause before speaking in case there is a lag. Use a headset or headphones if you can. This will free up your hands and sound better.
- Try not to talk over anyone else. Only one person can speak at a time. If you talk while someone else is talking, the judge will not be able to hear you.
- Have all your documents for the hearing in front of you. Have a pen and paper to take notes.
- If you are not ready for your hearing or want to speak with an attorney, you can ask the judge to postpone your hearing for another date.
- If your sound or video freezes during the hearing, use the chat feature or call the Clerk's Office to let them know that you are having technical issues.

## Special Tips for Video Hearings

(Click here for more information)

- Download the court's hearing software, WebEx, in advance and do a test run! The Court will provide you with a WebEx link in advance of the hearing.
- Set up the camera at eye level. If you are using your phone, prop it up so you can look at it without holding it.
- Look at the camera when you speak and avoid moving around on the video.
- Wear what you would normally wear to court.
- Sit in a well-lit room with no bright lights behind you.
- If possible, find a blank wall to sit in front of. Remember the judge will be able to see everything on your screen, so pick a location that is not distracting.

# District of Columbia Courts

## Tips for Using DC Courts Remote Hearing Sites

The DC Courts have **remote hearing sites** available in various locations in the community to help persons who may not have computer devices or internet service at home to participate in scheduled remote hearings. The Courts are committed to enhancing access to justice for all.

There are four remote access sites throughout the community which will operate **Monday – Friday, 8:30 am – 4:00 pm.**

**Remote Site - 3**
Balance and Restorative Justice Center
118 Q Street, NE
Washington, DC 20002

**Remote Site - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020



**Remote Site – 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**If you want to use a remote site location for your hearing**, call 202-879-1900 or email DCCourtsRemoteSites@dcsc.gov at least 24 hours before your hearing to reserve a remote access computer station.

**If you require special accommodations such as an interpreter for your hearing**, please call 202-879-1900 at least 24 hours in advance of your hearing so the Courts can make arrangements.

***You should bring the following items when you come to your scheduled site location***

1. Your case number and any hyperlinks provided by the Courts for your scheduled hearing.
2. Any documents you need for the hearing (evidence), including exhibits, receipts, photos, contracts, etc.
3. Materials for notetaking, including pen and paper.

*Safety and security measures are in place at the remote sites.

**Contact information to schedule your remote access computer station:**
Call: 202-879-1900
Email: DCCourtsRemoteSites@dcsc.gov

Tribunales del Distrito de Columbia

# Consejos para usar los sitios de audiencia remota de los Tribunales de DC

Los Tribunales de DC disponen de **sitios de audiencia remota** en distintos centros de la comunidad para ayudar a que las personas que no tienen dispositivos informáticos o servicio de Internet en su casa puedan participar en audiencias remotas programadas. Los Tribunales honran el compromiso de mejorar el acceso de toda la población a la justicia.

En toda la comunidad hay cuatro sitios de acceso remoto que funcionarán **de Lunes a Viernes, de 8:30 am a 4:00 pm**.

**Sito Remoto - 3**
Balance and Restorative Justice Center
118 Q Street, NE



**Sito Remoto - 2**
Balance and Restorative Justice Center
1110 V Street, SE
Washington, DC 20020

**Sito Remoto – 4**
Balance and Restorative Justice Center
920 Rhode Island Avenue, NE
Washington, DC 20018

**Si desea usar un sitio remoto para su audiencia**, llame al 202-879-1900 o envíe un mensaje de correo electrónico a DCCourtsRemoteSites@dcsc.gov al menos 24 horas antes de la audiencia, para reservar una estación de computadora de acceso remoto.

**Si necesita adaptaciones especiales**, como un intérprete para la audiencia, llame al 202-879-1900 al menos 24 horas antes de la audiencia para que los Tribunales puedan hacer los arreglos necesarios.

***Cuando concurra al sitio programado debe llevar los siguientes artículos***

1. Su número de caso y todos los hipervínculos que le hayan proporcionado los Tribunales para la audiencia programada.
2. Cualquier documento que necesite para la audiencia (prueba), incluidos documentos probatorios, recibos, fotos, contratos, etc.
3. Materiales para tomar nota, como papel y lápiz.

*Los sitios de acceso remoto cuentan con medidas de seguridad y protección.

**Información de contacto para programar su estación de computadora de acceso remoto:**
Teléfono: 202-879-1900
Correo electrónico: DCCourtsRemoteSites@dcsc.gov

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER
Plaintiff

vs.

Case Number 2026-CAB-004615

BLOCKRATIZE, INC. d/b/a POLYMARKET
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

(212) 433-2993
Telephone

*Clerk of the Court*

By [signature]
Deputy Clerk

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828　　Veuillez appeler au (202) 879-4828 pour une traduction　　Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오　　የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER
Plaintiff

vs.

Case Number 2026-CAB-004615

ADVENTURE ONE QSS, INC. d/b/a POLYMARKET
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

(212) 433-2993
Telephone

*Clerk of the Court*

By
Deputy Clerk

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER
Plaintiff

vs.

Case Number 2026-CAB-004615

QCX LLC d/b/a POLYMARKET US
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

(212) 433-2993
Telephone

Clerk of the Court

By ______________________
Deputy Clerk

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME*.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER
Plaintiff

vs.

Case Number 2026-CAB-004615

BLOCKRATIZE, INC. d/b/a POLYMARKET
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

Clerk of the Court

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

By ______________ Deputy Clerk

(212) 433-2993
Telephone

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER
Plaintiff

vs.

Case Number 2026-CAB-004615

ADVENTURE ONE QSS, INC. d/b/a POLYMARKET
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

*Clerk of the Court*

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

By ______________________
Deputy Clerk

(212) 433-2993
Telephone

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
7/7/2026 9:45:08 AM
Superior Court
of the District of Columbia

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

PHILIP MOELLER

Plaintiff

vs.

Case Number 2026-CAB-004615

QCX LLC d/b/a POLYMARKET US

Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Edward W. Ciolko
Name of Plaintiff's Attorney

228 Park Avenue South, Suite 97956
Address
New York, New York 10003

(212) 433-2993
Telephone

Clerk of the Court

By ______________________
Deputy Clerk

Date July 8, 2026

如需翻译,请打电话 (202) 879-4828 Veuillez appeler au (202) 879-4828 pour une traduction Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시요 የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

eFiled
8/5/2026 6:44:56 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

PHILIP MOELLER,

*Plaintiff*,

v.

BLOCKRATIZE, INC. d/b/a POLYMARKET, ADVENTURE ONE QSS, INC. d/b/a POLYMARKET, and QCX LLC d/b/a POLYMARKET US,

*Defendants*.

Case No. 2026-CAB-004615

Hon. Robert D. Okun

**NOTICE OF APPEARANCE**

The undersigned, whose address, email address, telephone number, and bar number appear below, hereby enters his appearance as counsel for Defendants Blockratize, Inc. d/b/a Polymarket; Adventure One QSS Inc. d/b/a Polymarket; and QCX LLC d/b/a Polymarket US (collectively, "Defendants").

DATED: August 5, 2026
Orange City, FL

Respectfully submitted,

*/s/ Nicolas G. Keller*

Nicolas G. Keller (DC Bar No. 90024950)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
nicolaskeller@quinnemanuel.com

*Attorney for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2026, the forgoing document was served on all Counsel of Record via the Court's electronic filing system.

*/s/ Nicolas G. Keller*
Nicolas G. Keller

eFiled
8/5/2026 6:34:39 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

PHILIP MOELLER,

*Plaintiff*,

v.

BLOCKRATIZE, INC. d/b/a POLYMARKET, ADVENTURE ONE QSS, INC. d/b/a POLYMARKET, and QCX LLC d/b/a POLYMARKET,

*Defendants*.

**Case No. 2026-CAB-004615**
Hon. Robert D. Okun

## NOTICE OF APPEARANCE

The undersigned, whose address, email address, telephone number, and bar number appear below, hereby enters his appearance as counsel for Defendants Blockratize, Inc. d/b/a Polymarket, Adventure One QSS Inc. d/b/a Polymarket, and QCX LLC d/b/a Polymarket US, (collectively, "Defendants").

DATED: August 5, 2026
Washington, D.C.

Respectfully submitted,

*/s/ Avi Perry*

Avi Perry (DC Bar No. 90023480)
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: 202-538-8000
aviperry@quinnemanuel.com

*Attorney for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2026, the forgoing document was served on all Counsel of Record via the Court's electronic filing system.

*/s/ Avi Perry*
Avi Perry

eFiled
8/10/2026 7:20:32 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PHILIP MOELLER,**
5106 Cathedral Avenue NW
Washington, DC, 20016

*on behalf of himself and all others similarly situated,*

*Plaintiff,*

v.

**BLOCKRATIZE, INC. d/b/a POLYMARKET,**
New York, New York
**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**
1280 Lexington Avenue, Suite 1448,
New York, New York 10028
**QCX LLC d/b/a POLYMARKET US,**
7251 W. Palmetto Park Road, Suite 102,
Boca Raton, Florida 33433

*Defendants.*

**Case No. 2026-CAB-004615**

Hon. Robert D. Okun

**DEFENDANTS' UNOPPOSED MOTION TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

Defendants Blockratize, Inc. d/b/a Polymarket, Adventure One QSS, Inc. d/b/a Polymarket, and QCX LLC d/b/a Polymarket US (collectively, "Defendants,") by and through their undersigned counsel, respectfully move this Court unopposed to extend the time for Defendants to respond to the Complaint through and including September 25, 2026. In support thereof, Defendants state as follows:

1. Plaintiff filed the Complaint and Jury Trial Demand (the "Complaint") in the above-captioned action on July 2, 2026.

2. Defendant QCX LLC was purportedly served on August 3, 2026. To the extent, if any, that such service of process was valid, it thereby set August 24, 2026, as the deadline for Defendant QCX LLC to respond.

3. In any event, Defendants have agreed to waive formal service of process in this matter, without waiver to their jurisdictional and other positions, arguments, objections, and rights.

4. Good cause supports this extension, which will provide Defendants with sufficient time to respond to Plaintiff's Complaint. This extension will neither prejudice any party nor affect any other deadlines currently ordered by the Court.

5. Defendants have not previously sought an extension of time to respond to the Complaint, and this is their first such request.

6. Accordingly, Defendants respectfully request that the Court set the time for Defendants to move, answer, or otherwise respond to the Complaint to September 25, 2026.

Defendants have conferred with Plaintiff, who does not oppose the relief sought herein.

Dated: August 10, 2026

*/s/ Avi Perry*

Avi Perry (DC Bar No. 90023480)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
aviperry@quinnemanuel.com

Nicolas G. Keller (DC Bar No. 90024950)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
nicolaskeller@quinnemanuel.com

*Attorney for Defendants*

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PHILIP MOELLER,**
5106 Cathedral Avenue NW
Washington, DC, 20016

*on behalf of himself and all others similarly situated,*

*Plaintiff,*

v.

**BLOCKRATIZE, INC. d/b/a POLYMARKET,**
New York, New York
**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**
1280 Lexington Avenue, Suite 1448,
New York, New York 10028
**QCX LLC d/b/a POLYMARKET US,**
7251 W. Palmetto Park Road, Suite 102,
Boca Raton, Florida 33433

*Defendants.*

**Case No. 2026-CAB-004615**

Hon. Robert D. Okun

**[PROPOSED] ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

**[PROPOSED] ORDER**

Upon consideration of Defendants Blockratize, Inc. d/b/a Polymarket, Adventure One QSS, Inc. d/b/a Polymarket, and QCX LLC d/b/a Polymarket US's (collectively, the "Defendants") Unopposed Motion to Extend Time to Respond to Complaint, IT IS HEREBY ORDERED THAT:

The time for Defendants to respond to the Complaint is extended through and including September 25, 2026.

Dated: August ___, 2026

_______________________________
Hon. Robert D. Okun

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| **PHILIP MOELLER** | * | |
| | * | **Case No. 2026-CAB-004615** |
| **v.** | * | |
| | * | **Hon. Robert Okun** |
| **BLOCKRATIZE, INC. ET AL.** | * | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION**
**TO EXTEND TIME TO RESPOND TO THE COMPLAINT**

Upon consideration of the Defendants' Unopposed Motion to Extend Time to Respond to the Complaint ("Unopposed Motion"), filed August 10, 2026, it is this 12th day of August 2026, hereby

**ORDERED** that the Defendants' Unopposed Motion is **GRANTED**; it is further

**ORDERED** that the Defendants shall file their answer or other responsive pleading by **September 25, 2026**; and it is further

**ORDERED** that the **Remote Initial Scheduling Conference** is **CONTINUED** from October 2, 2026 to **November 20, 2026 at 9:30 a.m. in Courtroom 518**.



Judge Robert Okun
(Signed in Chambers)

**Copies to**: All counsel of record.

eFiled
8/12/2026 10:41:44 PM
Superior Court
of the District of Columbia

# Superior Court of the District of Columbia

CIVIL DIVISION - CIVIL ACTIONS BRANCH

INFORMATION SHEET

Philip Moeller
Plaintiff(s)

vs

Blockratize, Inc., et al.
Defendant(s)

Case Number: 2026-CAB-004615

Date: 8/12/2026

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Edward W. Ciolko | Relationship to Lawsuit |
|---|---|
| Firm Name: Sterlington, PLLC | ☑ Attorney for Plaintiff<br>☐ Self (Pro Se)<br>☐ Other: ______ |
| Telephone No.: (212) 443-2993 DC Bar No.: 985110 | |

TYPE OF CASE: ☐ Non-Jury ☐ 6 Person Jury ☑ 12 Person Jury

Demand: $ ______ Other: ______

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: 2026-CAB-004388 Judge: Maribeth Raffinan Calendar #: Cal. 13 Cv 2

Case No.: ______ Judge: ______ Calendar #: ______

NATURE OF SUIT: *(Check One Box Only)*

**CONTRACT**
- ☐ Breach of Contract
- ☐ Breach of Warranty
- ☐ Condo/Homeowner Assn. Fees
- ☐ Contract Enforcement
- ☐ Negotiable Instrument

**COLLECTION/INS. SUB**
- ☐ Debt Collection
- ☐ Insurance Subrogation
- ☐ Motion/Application for Judgment by Confession
- ☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
- ☐ Breach of Contract
- ☐ Discrimination
- ☐ Wage Claim
- ☐ Whistle Blower
- ☐ Wrongful Termination

**REAL PROPERTY**
- ☐ Condo/Homeowner Assn. Foreclosure
- ☐ Declaratory Judgment
- ☐ Drug Related Nuisance Abatement
- ☐ Ejectment
- ☐ Eminent Domain
- ☐ Interpleader
- ☐ Other
- ☐ Quiet Title
- ☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
- ☐ Administrative Search Warrant
- ☐ App. for Entry of Jgt. Defaulted Compensation Benefits
- ☐ Enter Administrative Order as Judgment
- ☐ Libel of Information
- ☐ Master Meter
- ☐ Petition Other
- ☐ Release Mechanics Lien
- ☐ Request for Subpoena

**MALPRACTICE**
- ☐ Medical – Other
- ☐ Wrongful Death

**AGENCY APPEAL**
- ☐ Dangerous Animal Determination
- ☐ DCPS Residency Appeal
- ☐ Merit Personnel Act (OEA)
- ☐ Merit Personnel Act (OHR)
- ☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☐ Other - General Civil
- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☑ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

[signature] ________________________ 8/12/2026 ________________

Filer/Attorney's Signature Date

eFiled
8/14/2026 4:31:32 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

PHILIP MOELLER,

Plaintiff,

v.

BLOCKRATIZE, INC. d/b/a POLYMARKET, ADVENTURE ONE QSS, INC. d/b/a POLYMARKET, and QCX LLC d/b/a POLYMARKET US,,

Defendants.

Case No. 2026-CA-004615

Hon. Robert D. Okun

**NOTICE OF FILING OF RELATED COMPLAINT**

**PLEASE TAKE NOTICE** that Plaintiff Philip Moeller, by and through undersigned counsel, respectfully submits this Notice to advise the Court of the filing of a related complaint, as follows:

1. On June 26, 2026 , a complaint captioned *National Association of Consumer Advocates, Inc. v. Blockratize, Inc., et al.*, Case No. 2026-CAB-004388, was filed in Superior Court of the District of Columbia, Civil Division. A true and correct copy of that complaint is attached hereto as Exhibit A.

2. The above-captioned action and NACA involve the same parties and relate to the same subject matter and accordingly may be related within the meaning of Superior Court Rule of Civil Procedure 40-I.

3. A copy of counsel's correspondence dated August 12, 2026 transmitting the foregoing complaint to all counsel of record is attached hereto as Exhibit B.

4. Plaintiff submits this Notice for the information of the Court and the parties and does not seek any relief at this time.

Dated: August 14, 2026

Respectfully submitted,

*/s/ Edward Ciolko*

Edward W. Ciolko (Bar No. 985110)
Julian Jiggetts (Bar No. 1739066)
Jennifer S. Czeisler (*pro hac vice* forthcoming)
**STERLINGTON, PLLC**
228 Park Avenue South, Suite 97956,
New York, New York 10003
Tel.: (212) 433-2993
edward.ciolko@sterlingtonlaw.com
julian.jiggetts@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of August, 2026, a copy of the foregoing Notice of Filing of Related Complaint, together with the exhibits thereto, was served upon all counsel of record through the Court's electronic filing system, eFileDC.

*/s/ Edward Ciolko*
Edward W. Ciolko (Bar No. 985110)

# EXHIBIT A

**IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, INC.**,
1629 K St. NW, Suite 604,
Washington D.C. 20006,

Plaintiff,

**v.**

**BLOCKRATIZE, INC. d/b/a POLYMARKET**,
1280 Lexington Ave.,
Suite 1448, Front 2, New York, NY 20028,

**ADVENTURE ONE QSS INC. d/b/a POLYMARKET.COM**, 1280 Lexington Ave.,
Suite 1448, Front 2, New York, NY 20028,

**QCX LLC d/b/a POLYMARKET US**,
7251 W. Palmetto Park Rd., Suite 102,
Boca Raton, FL 33433,

**QC CLEARING LLC d/b/a POLYMARKET CLEARING**, 7251 W. Palmetto Park Rd.,
Suite 102, Boca Raton, FL 33433,

**QC TECH LLC d/b/a PM US TECH**,
7251 W. Palmetto Park Rd., Suite 102,
Boca Raton, FL 33433,

**SHAYNE COPLAN**, and

**MATTHEW MODABBER**,

Defendants.

For Corporate Defendants, serve:
C T CORPORATION SYSTEM
28 Liberty Street, 42nd floor
New York, NY 10005

Case No.: 2026-CAB-004388

**COMPLAINT AND JURY TRIAL DEMAND**

## INTRODUCTION

1. This action addresses a pattern of flagrantly deceptive and unfair marketing used to mislead American consumers – including college-aged D.C. residents – to risk their money placing bets on a Polymarket platform.

2. Defendants have used secretive and undisclosed paid endorser posts on social media to raise their profile online.

3. To deceive consumers that they are likely to make money on Polymarket platforms, Defendants have also furtively advertised these platforms with influencer videos using a fake Polymarket site ("influencer ads"). These are paid advertising videos created using a simulated version of a Polymarket platform, which show social media influencers exploring the platform and placing bets. Viewers are led to believe this is organic footage of the influencer using a Polymarket platform, but the videos actually show fake bets on a fake site.

4. Defendants have also paid to make their Polymarket influencer ads go viral on social media through a scheme called "clipping." Individual "clippers" create short segments of the Polymarket influencer ads, and are paid according to whether they can make these clips go viral; i.e., they are paid by the number of views. Defendants explicitly require that clips of their ads must target people in the U.S., and Defendants instruct the creators on how to drive "engagement and retention" and make the clips deceptive by design.

5. Defendants' Polymarket influencer ads give viewers, including teens, the impression that: a) content creators and clippers are disinterested consumers posting authentic experiences; b) content creators are typical of traders on Defendants' platforms; c) content creators have placed genuine trades on Defendants' platforms; and d) consumers are likely to make money trading on Defendants' platforms. All of these representations are deceptive.

6. In parallel marketing efforts, Defendants have aggressively targeted college students on U.S. campuses to encourage students to gamble on their platforms.

7. Defendants have engaged in unfair business practices while marketing the opportunity to place bets on the Polymarket platforms. They have used manipulative forms of advertising to promote their gambling opportunity to college-aged Americans, while obscuring the odds that these consumers will lose their money.

8. The number of active bettors on Polymarket.com was approximately 643,000 in April of 2026. In the three months from March to May of 2026, the volume of trading on Polymarket.com was more than $26 billion and the volume of trading on Polymarket US was more than $3.3 billion. Many of the bettors on Polymarket US and Polymarket.com are D.C. residents.

9. As a result of Defendants' deceptive and unfair practices, consumers in D.C. and throughout the United States have been harmed.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under D.C. Code § 11-921(a) and D.C. Code §§ 28–3905(k)(1) and (k)(2).

11. This Court has personal jurisdiction over Defendants under D.C. Code § 13-423(a) because Defendants transact business in the District and caused tortious injuries in the District by their acts and omissions. Plaintiff's claims arise from Defendants' purposeful activities directed toward residents of D.C.

12. As summarized here and further explained below, Defendants have directed their deceptive and unfair marketing toward residents of D.C. and have transacted business in the District under two related brand names: "Polymarket" and "Polymarket US."

13. In 2022, Defendant Blockratize, doing business as Polymarket ("Polymarket"), was fined by the Commodity Futures Trading Commission ("CFTC") for operating illegally, and was ordered to cease and desist offering its services to U.S. residents. Polymarket agreed to block all Americans from using its platform at Polymarket.com.

14. Following the CFTC's action, Polymarket nominally transferred ownership of the website Polymarket.com to a company based in Panama – Defendant Adventure One QSS Inc. Polymarket and Adventure One QSS Inc. began to "geoblock" users (stop them from using the platform) if their IP addresses indicated a U.S. location.

15. Defendant Polymarket later purchased Defendants QXC LLC and QC Clearing LLC, which had registered with the CFTC as a U.S. event-derivatives platform, along with their affiliate QC Tech LLC. Following this purchase, the CFTC has permitted Defendants to offer event-contract trading to the U.S. public under regulatory oversight. Defendants have begun to transact business with certain consumers across the country, including in D.C., under the brand name "Polymarket US."

16. Defendants began advertising "Polymarket US" to the public, including D.C. residents, in the summer of 2025. In August, Defendants announced: "BREAKING: Legal football trading is coming to ALL 50 states this fall."

17. On September 26, Defendant Matthew Modabber, Polymarket's Chief Marketing Officer, posted the following on the platform X: "Yes I was just testing U.S app we're about to launch, this thing is BUTTER. Soon." On September 30, Defendant Modabber posted "Heads down focused on the U.S app launch in the coming weeks!"

18. The Polymarket US platform was made available by invitation only in December 2026, with a waitlist. In mid-May 2026, Defendants quietly stopped requiring a code to join the platform.

19. In sum, Polymarket US recently became publicly available, while Polymarket.com is purportedly not available to U.S. residents. Nonetheless, since at least the beginning of 2025, Defendants have intentionally caused effects within and outside D.C. by aggressively marketing both Polymarket platforms to consumers through advertising in D.C. and nationwide.

20. Defendants also disseminate targeted marketing and advertisements to D.C. residents, online and otherwise, with the intent of promoting Polymarket platforms specifically to consumers in this District.

21. For example, Defendants targeted D.C. residents to build buzz about their platforms in March of 2026. Following extensive online advertising, Defendants opened a pop-up brick and mortar establishment called “The Situation Room” at 2033 K Street NW – a block from the CFTC offices. The following image was just one of the related ads posted on LinkedIn by the “@Polymarket” account and reposted by Defendant Modabber:




**GRAPHIC A**

22. Defendants' marketing has been effective in attracting U.S. consumers, including D.C. residents, to transact business on the global platform Polymarket.com.

23. In the current marketplace, it is trivial to circumvent IP address geoblocking through inexpensive virtual private networks ("VPNs") and other technical workarounds that obscure a user's true location. The impact of straightforward VPN usage on Polymarket.com has been clear since 2022, and became undeniable by 2024. An infamous example was revealed in a recent indictment of a U.S. soldier who allegedly used a VPN to place a bet on the removal of former Venezuelan President, Nicolas Maduro. But until recently, Defendants were not blocking traffic

from well-known VPNs. And Defendants still do not use certain stronger geofencing approaches, such as methods that rely on GPS.

24. Defendants' history of lax geofencing policies has produced tangible results: a recent empirical study estimated that between $10.6 billion and $26.7 billion of the trading volume on Polymarket.com can be attributed to users in the United States.

25. In sum, Defendants have been transacting with consumers in this District via Polymarket.com – despite the CFTC ban – in addition to their recent and ongoing transactions with D.C. residents via Polymarket US.

26. The National Association of Consumer Advocates, Inc. ("NACA") has standing to bring this suit under D.C. Code § 28-3905(k)(1)(D)(i), which provides in relevant part that "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action . . . for relief from such use by such person of such trade practice." A multitude of consumers in D.C. could bring actions against Defendants for engaging in the deceptive and unfair marketing described below.

27. This action cannot be removed to federal court. *See, e.g.*, *Travelers United v. Hyatt Hotels*, 761 F. Supp. 3d 97 (D.D.C. Jan. 3, 2025) (remanding putative class action brought by Travelers United under the D.C. Consumer Protection Procedures Act ("CPPA")); *Nat'l Ass'n of Consumer Advocs. v. RentGrow, Inc.,* 2025 U.S. Dist. LEXIS 94421 (D.D.C. May 16, 2025) (remanding a case brought by Plaintiff under the CPPA because Plaintiff lacked Article III standing); *Nat'l Ass'n of Consumer Advocs. v. Gemini Tr. Co., LLC,* 757 F. Supp. 3d 59 (D.D.C. Nov. 18, 2024) (same).

**PLAINTIFF**

28. NACA is a nonprofit public interest organization. NACA is organized under the laws of the Commonwealth of Massachusetts, and registered as a foreign corporation with the District of Columbia. Its principal place of business is in D.C.

29. NACA is a nonprofit association of attorneys and consumer advocates committed to representing consumers' interests. NACA's primary focus is the protection and representation of consumers.

30. NACA serves as a voice for consumers in the ongoing struggle to curb unfair or abusive business practices that harm consumers. NACA has been instrumental in advocating against consumer abuses both federally and locally in the District.

31. NACA's robust history of consumer advocacy demonstrates a sufficient nexus with the interests of the consumers represented in this case. NACA's mission is to support justice for all consumers. With its members, NACA advocates for a fair and open marketplace that forcefully protects the rights of consumers.

32. NACA brings this suit to enforce the CPPA in light of Defendants' unfair and deceptive practices and the resulting harm that has affected D.C. consumers. The names of the affected District consumers are contained within Defendants' records.

33. This is not a class action, and no class certification will be sought. Rather, NACA brings this suit pursuant to § 28-3905(k)(1)(D) of the CPPA.

**DEFENDANTS**

34. Blockratize, Inc. (d/b/a Polymarket) ("Polymarket") is a Delaware corporation with its headquarters at 1280 Lexington Avenue, Suite 1448, Front 2, New York, NY 10028. Polymarket developed the software for the Polymarket.com platform, which it licenses to Defendant

Adventure One QSS Inc. for use on Polymarket.com. Defendant Shayne Coplan is the founder of Polymarket and serves as the CEO. Defendant Matthew Modabber joined Polymarket in January 2024 and states that he was the company's 11th employee; he serves as the Chief Marketing Officer. At all times relevant to this Complaint, acting alone or in concert with others, Polymarket has advertised, marketed, and transacted with consumers in this District and throughout the United States.

35. Adventure One QSS Inc. (d/b/a Polymarket.com) ("Adventure One QSS") is incorporated under the laws of Panama and lists its business address as Oceania Business Plaza, 21st Floor, Punta Pacifica, Panama City, Panama. No employees work from this location. Adventure One QSS owns and operates the website Polymarket.com. It shares marketing functions with the other Corporate Defendants, which are led by Defendant Modabber. Defendant Coplan is an Adventure One QSS Director and served as its President between December 2021 and April 2022. Coplan still retains authority over the corporation. The currently-listed President of Adventure One QSS, Harry Jones, is also Polymarket's current Director of Global Affairs. At all times relevant to this Complaint, acting alone or in concert with others, Adventure One QSS has advertised, marketed, and transacted with consumers in this District and throughout the United States.

36. QCX LLC (d/b/a Polymarket US) ("QCX") is a Delaware limited liability company and a subsidiary of Polymarket. It is licensed by the CFTC as an exchange. QCX is incorporated in Delaware but operates out of New York, NY. It uses the brand names "Polymarket" and "Polymarket US." Polymarket's CEO Shayne Coplan controls QCX and Polymarket's Chief Marketing Officer Matthew Modabber markets on its behalf. Beginning in or about July 2025,

acting alone or in concert with others, QCX has advertised, marketed, and transacted with consumers in this District and throughout the United States.

37. QC Clearing LLC (d/b/a Polymarket Clearing) ("QC Clearing") is a Delaware limited liability company and a subsidiary of Polymarket. It is licensed by the CFTC as a clearinghouse. QC Clearing is incorporated in Delaware but operates out of New York, NY. It uses the brand names "Polymarket" and "Polymarket US." Polymarket's CEO Shayne Coplan controls QC Clearing and Polymarket's Chief Marketing Officer Matthew Modabber markets on its behalf. Beginning in or about July 2025, acting alone or in concert with others, QC Clearing has advertised, marketed, and transacted with consumers in this District and throughout the United States.

38. QC Tech LLC (d/b/a PM US Tech) ("QC Tech") is a Delaware limited liability company and a subsidiary of Polymarket. It is incorporated in Delaware but operates out of New York, NY. QC Tech uses the brand names "Polymarket" and "Polymarket US." Polymarket's CEO Shayne Coplan controls QC Tech and Polymarket's Chief Marketing Officer Matthew Modabber markets on its behalf. Beginning in or about July 2025, QC Tech has advertised, marketed, and transacted with consumers in this District and throughout the United States.

39. Shayne Coplan is the founder and CEO of Polymarket. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices described in this Complaint. Coplan has ultimate decision-making authority over all of the Corporate Defendants' business operations, including its marketing campaigns. He resides in New York and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

40. Matthew Modabber joined Polymarket in January 2024 and serves as its Chief Marketing Officer. Modabber states that in his role at Polymarket, he "Built and led a 50+ person team across marketing, partnerships, and growth." He also says that he scaled from about $300k in daily volume to "mid 9-figure daily volume via digital growth hacks." Beginning in or about January 2024, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices described in this Complaint. He resides in New York and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

**DEFENDANTS OPERATE AS A COMMON ENTERPRISE, COLLECTIVELY DRIVING POLYMARKET'S IMPACT ON CONSUMERS IN THE U.S.**

41. Polymarket/Blockratize, Adventure One QSS, QCX, QC Clearing, and QC Tech (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged in this Complaint. Corporate Defendants have conducted the business practices described herein through an interrelated network of companies that work under the same leadership, share common business functions, use the same technology, share office space, have common employees, intermingle their marketing, and jointly use the "Polymarket" branding.

42. Individual Defendants Shayne Coplan and Matthew Modabber have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

43. Because the Corporate Defendants, under the direction of Coplan and Modabber, have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.

44. A brief history of the Corporate Defendants will demonstrate their operation as a common enterprise rather than a group of five distinct entities.

45. In 2020, Defendant Coplan founded Polymarket, a cryptocurrency-based prediction market. Individuals could visit the platform and place bets on future outcomes including topics related to the COVID 19 pandemic and the U.S. presidential election.

**A. *First Federal Proceeding***

46. On January 3, 2022, the CFTC instituted legal proceedings against Polymarket, accusing it of operating illegally. The CFTC filed and settled charges with the company, which it described as follows:

> "The order finds that, beginning in approximately June 2020, Polymarket had been operating an illegal unregistered or non-designated facility for event-based binary options online trading contracts, known as 'event markets.' According to the order, through its website, Polymarket offered the public the opportunity to 'bet on your beliefs' by buying and selling binary options contracts related to an event taking place in the future that are susceptible to a 'yes' or 'no' resolution, such as: 'Will $ETH (Ethereum) be above $2,500 on July 22?'; 'Will the 7-day average COVID-19 case count in the U.S. be less than 15,000 for the day of July 22'; 'Will Trump win the 2020 presidential election?'. The order further finds that Polymarket has offered more than 900 separate event markets since its inception, while deploying smart contracts hosted on a blockchain to operate the markets. Polymarket creates, defines, hosts, and resolves the trading and execution of contracts for the event-based binary option markets offered on its website.
>
> According to the order, such event market contracts, each of which is composed of a pair of binary options, constitute swaps under the CFTC's jurisdiction, and therefore can only be offered on a registered exchange in accordance with the [Commodity Exchange Act] and CFTC regulations."

47. The 2022 CFTC order required Polymarket to pay a civil monetary penalty and wind down its activities in the United States.

**B. *Polymarket Uses Entity in Panama as Part of its Common Enterprise***

48. Following the CFTC enforcement action, Polymarket stated that it had blocked U.S. customers from accessing Polymarket.com. It purportedly wound down its U.S. operations and shifted its legal corporate base to Panama, operating under the Adventure One QSS corporation. It did not move its headquarters or workforce from New York City.

49. Defendant Shayne Coplan, Polymarket's CEO, was listed as the Adventure One QSS President from December 22, 2021 until April 2022. At that point, Coplan's role was changed to "Director" and Harry Jones was listed as the President. Harry Jones is Polymarket's current Director of Global Affairs.

50. Polymarket has reportedly confirmed that it has no employees based in Panama.

51. Dan Bernstein, a sports business and technology journalist from *Sportico*, recently conducted an investigation into the relationship between Adventure One QSS and Polymarket, including by traveling to Panama. His findings are relevant here:

> Adventure One has virtually no online presence that could help confirm whether it maintains separate day-to-day staff from Polymarket, if it is functionally independent or the percentage stake Polymarket holds in it. Sportico could not locate any LinkedIn profile listing current or past work experience at Adventure One, nor any postings about the company on several Panama job boards. Coplan and Jones do not mention their association with Adventure One in their public profiles.
>
> Adventure One's website hasn't been updated since it was first archived by the Wayback Machine in 2023. It features only a homepage with two lines of text. One reads "Web3 Development and Research," and the other says, "We're a passionate team building and researching the pioneering use cases for blockchain technology."

Dan Bernstein, "What is Polymarket Doing in Panama?," *Sportico* (Feb. 19, 2026).

**C. *Second Federal Investigation***

52. As noted in paragraph 23, *supra*, the Polymarket.com platform began blocking bettors that were recognized as having US IP addresses, but without filtering for well-known VPNs or taking other robust approaches to geofencing.

53. On November 13, 2024, the FBI raided Defendant Coplan's home and seized his phone. According to *Bloomberg News*, the Department of Justice was investigating Polymarket for violating the 2022 CFTC settlement by allowing U.S. users to gamble on its platform.

54. Following changes in leadership at the federal level, the criminal probe regarding Defendants' activities in the U.S., as well as a parallel civil investigation by the CFTC, were dropped in July 2025.

**D. *Polymarket Acquires QCX, QC Clearing, and QC Tech as Part of its Common Enterprise***

55. Also in the summer of 2025, Polymarket acquired a group of corporate entities—QCX, QC Clearing, and QC Tech—whose recently-approved CFTC licenses as a Designated Contract Market and Derivatives Clearing Organization cleared the path for Defendants to legally offer event derivative trading in the U.S.

56. Defendants also quietly set up additional Delaware LLCs that summer: they registered A2 QSS LLC and Coming Home GBA LLC on July 7, 2025, and Bootstrat Capital LLC on September 16, 2025. Defendants recently disclosed that these entities are affiliates of Corporate Defendants QCX, QC Clearing, and QC Tech, but the role of the affiliates in operating Defendants' common enterprise is not publicly known.

57. In late 2025, based on the acquisition of the already-licensed entities, CFTC issued an amended order that allowed Polymarket users based in the U.S. to trade certain event contracts.

58. Defendant Coplan posted: "This paves the way for us to welcome American traders again. I've waited a long time to say this: Polymarket is coming home".



Shayne Coplan in • 3rd+
+ Follow
CEO @ Polymarket
11mo •

Polymarket has acquired QCEX, a CFTC-regulated exchange and clearinghouse, for $112 million.

This paves the way for us to welcome American traders again.

I've waited a long time to say this:

Polymarket is coming home

traded
Traded: Venture Capital
+ Follow
39,676 followers
11mo • Edited •

Polymarket, led by Founder and CEO Shayne Coplan, has acquired QCEX — the CFTC-licensed exchange and clearinghouse — for $112 million, marking a major regulatory milestone for the world's largest prediction market. The deal enables Polymarket's reentry into the U.S. under a fully compliant framework, paving the way for American users to legally trade on its platform, which has already seen $6 billion in predictions in 2025.

SALE PRICE: $112,000,000

Polymarket HQ: #NewYork #NY #NewYorkCity #NYC

#VentureCapital #Polymarket #QCEX #ShayneCoplan #TradedVC

**GRAPHIC B**

59. As of June 2026, Defendants state on their Polymarket.us website that "Polymarket" operates globally with the full range of betting options, whereas "Polymarket US" currently offers markets on sports, with "[p]olitics, culture, finance, and economics coming soon."

60. The global exchange at Polymarket.com is purportedly run by Adventure One QSS, and Polymarket US is ostensibly run out of QCX, QC Clearing, and QC Tech. But it is difficult to distinguish between these two supposedly separate operations.

61. Both operations are controlled by Defendant Coplan. One data point that seems superficially contradictory is that Justin Hertzberg of Delray Beach, Florida is listed as the CEO of QCX in corporate registration documents spanning from March 2021 through at least April 9, 2026. However, the same Justin Hertzberg is a CEO in the proprietary trading industry who is very active on LinkedIn and yet has never mentioned playing any role whatsoever in Polymarket or Polymarket US. According to journalist Michael Roddan at *The Information*, "current and former Polymarket employees struggled to identify what Hertzberg actually does at Polymarket."

62. Defendants use the same social media accounts to promote both Polymarket.com and Polymarket US, and work through a single marketing team led by Defendant Modabber, with many common advertisements and campaigns.

63. At first glance, "Polymarket US" appears to have its own General Counsel, but that individual works out of Polymarket headquarters in New York. He recently posted "I'm hiring" and linked to a job posting describing work for a "cutting-edge U.S., CFTC-regulated exchange (DCM) and clearing organization (DCO) operating within the federal commodity derivatives regulatory framework." That sounds like it describes Polymarket US, but the job posting states explicitly that it's a job for a "Polymarket" regulatory attorney in New York, NY. Indeed, the "Polymarket US General Counsel" included the following in his post: "Come join me at The World's Largest Prediction Market™!"

64. In fact, all of Corporate Defendants' employees who report to an office (i.e., are not remote workers), use the office space at Polymarket's New York City headquarters: 1280 Lexington Avenue, Suite 1448, Front 2, New York, NY 10028.

65. The website for Polymarket US, at "Polymarket.us", uses a QR code to send visitors to the only Polymarket-branded app available on App Stores in the U.S., which is called "Polymarket."

66. The description of this app states that it is "Legal in all 50 states" and states: "Markets on Everything: Trade sports, politics, culture, crypto, & more." It concludes by saying "Join the tens of millions of Polymarket users & see why there's been over $27 billion traded globally."

67. The "Developer" of the App is listed as "Polymarket" and the "Seller" is listed as "Blockratize Inc".

68. A link to the "developer's privacy policy" for the App connects to a policy on the Polymarket.com website, which was last updated on January 11, 2022. The Privacy Policy states: "This website-hosted user interface (this 'interface') is made available by Adventure One QSS Inc., a corporation organized and existing under the laws of Panama." Under "Jurisdiction" the policy states: "The Services, including this Site, is made available by us from Panama and is not intended to subject us to the laws or jurisdiction of any state, country, or territory other than that of Panama." Under "Contact Us," the policy states to contact "legal@polymarket.com."

69. Available evidence points to two conclusions. All five Corporate Defendants are intertwined to operate together under the direction of the Polymarket leaders in New York, and they attempt to avoid accountability by using a confusing corporate structure and at times disclaiming liability under the laws of the United States.

## APPLICABLE LAW

70. The D.C. Consumer Protection Procedures Act ("CPPA") is a remedial statute, which courts construe liberally to "to promote its purpose," including ensuring that "a just mechanism

exists to remedy all improper trade practices" and promoting "fair business practices throughout the community." D.C. Code §§ 28–3901(c), (b)(1), (2).

71. The CPPA defines "consumer" broadly to mean "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services, including as a co-obligor or surety, or does or would otherwise provide the economic demand for a trade practice." *Id.* § 28-3901(a)(2)(A).

72. The CPPA defines "goods and services" to mean "any and all parts of the economic output of society, at any stage or related or necessary point in the economic process, and includes consumer credit, franchises, business opportunities, real estate transactions, and consumer services of all types." *Id*. § 28-3901(a)(7).

73. The CPPA makes it illegal for any person to "engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby." *Id*. § 28-3904. It goes on to list some examples of unfair and deceptive trade practices, including "represent[ing] that goods or services have … characteristics … that they do not have" and misrepresenting "a material fact which has a tendency to mislead." *Id.* § 28-3904(a), (e).

74. In construing the term "unfair or deceptive trade practice" under the CPPA, "due consideration and weight shall be given to the interpretation by the Federal Trade Commission and the federal courts of the term 'unfair or deceptive act or practice,' as employed in Section 5(a) of [the FTC Act]." *Id.* § 28-3901(d) (referencing 15 U.S.C. § 45(a)).

75. As noted above, the CPPA authorizes public interest organizations, such as NACA, to bring claims "on behalf of the interests of a consumer or a class of consumers." *Id.* § 28–3905(k)(1)(D).

## DEFENDANTS' BUSINESS PRACTICES

**A. *Defendants Use Undisclosed Paid Endorsements on Social Media***

76. This case is not focused on whether gambling and gaming laws apply to the Defendants. This case is about deceptive and unfair advertising practices. We adopt the terms "gambling" and "betting" because these are the most accurate descriptions of the opportunity to make money on Defendants' platforms, from a consumer's psychological perspective. From this perspective, gambling is the anticipation of a reward under uncertain conditions. *See, e.g.*, L. Clark et al., "Pathological Choice: The Neuroscience of Gambling and Gambling Addiction," *J. Neourosci.* (Nov. 6, 2013).

77. Companies that advertise on social media have a well-known obligation to ensure that influencers disclose any "material connection" they have with the advertiser. Of course, "material connections" include the fact that an endorser has received compensation for endorsing a product or service. Yet, Defendants have used deliberately secretive marketing campaigns to raise their brand's profile through ads by paid endorsers that are disguised as organic content.

78. In fact, individual influencers with hundreds of thousands of followers have secretly received thousands of dollars from Defendants to post about the Polymarket platforms, and have done so without disclosing their affiliation with the brand.

79. Defendants have written posts for social media influencers to share and at times have asked them to promote specific bets.

80. Polymarket's chief marketing officer, Defendant Modabber, reportedly used a personal PayPal account to send at least $350,000 to content creators between January 2025 and February 2026. The motive is clear; Modabber has written that the key to growth is "a product people can't shut up about."

81. For example, Defendants released a dashboard to track DOGE cuts in early 2025. Political activist Riley Gaines, who received at least $6,600 from Modabber, posted about the release to over a million followers on the platform "X," stating: "This is awesome!" The post did not mention a financial relationship with any Polymarket entity or brand, or with Modabber.




**GRAPHIC C**

82. Similarly, a conservative media figure named Elijah Schaffer received more than $8,400 from Defendant Modabber and stated of the DOGE dashboard release: "Exciting news!" and that it "would be bookmarked for the next 4 years." This post did not disclose Schaffer's material

connection with Defendants. However, Schaffer later admitted in a comment on the post that he is a “long term brand rep” for “Polymarket.”

83. The ads about Defendants’ DOGE dashboard were not an isolated event. For example, Alexander Kaufman, a climate reporter who runs a Substack newsletter, received at least $1,200 from Modabber and posted on X about the Polymarket.com odds regarding New York City’s Democratic primary.

84. Arash Azizi, a historian who writes for the Atlantic, received at least $3,000 from Moddaber and wrote in October of 2025: “It's fascinating how Polymarket numbers are a good guide for the direction of events. Before any polls, it saw the rise of Mamdani for instance!"

85. Political commentator Brian Krassenstein received more than $9,300 from Modabber and posted the following in October 2025 with no disclosure regarding the sponsorship: “It really is unbelievable how accurate Polymarket has been these last 9 months.”

86. And influencer Alex LoRusso, who received at least $18,750 from Modabber, posted dozens of times about Polymarket without mentioning his connection with Defendants.

87. These are merely examples; the full extent of Defendants’ secret sponsorship of undisclosed advertisements is not yet known.

**B. *Defendants Pay Content Creators to Make Videos Placing Fake Bets on a Fake Site***

88. Defendants have engaged in a clandestine effort to place thousands of undisclosed advertisements on social media platforms such as TikTok, Instagram, YouTube, and X, and then make those ads “go viral” among young users in the U.S.

89. Defendants promote their platforms by paying content creators, including dozens of college students or college-aged individuals, to make videos of themselves placing bets or

talking about Polymarket. Content creators paid by Defendants have reported making $2,000 to $3,000 per month on their videos.

90. At times, Defendants have reportedly prohibited these content creators from disclosing they were being paid by Defendants to create the videos.

91. Defendants require the creators to use simulated versions of a Polymarket platform to create their videos. An analysis of the videos by the *Wall Street Journal* uncovered certain tell-tale signs of the fakery, such as spelling the URL as "poimarket" with a capitalized "i" in some of the videos, as well as other indicia of inauthenticity.

92. Defendants' simulated Polymarket site includes numerous signals that strongly imply the video creator is a profitable trader on the platform.

93. For example, Defendants take collateral for trades in U.S. dollars, which are labelled "pUSD" or "Polymarket USD" in the user's Polymarket wallet. In some instances, the content creator's simulated Polymarket site shows them successfully placing bets of thousands of dollars. It is not possible to place a bet of thousands of dollars unless the user has that amount of money in their Polymarket account, so a viewer would believe the content creator had that amount sitting in their Polymarket account in order to place bets with it.

94. Furthering the duplicity, the dummy site that Defendants require creators to use sometimes itself indicates that the creator has thousands or tens of thousands of dollars in their Polymarket wallet.

95. A recent investigative report from the *Wall Street Journal* studied 1,105 social media videos by ten creators reportedly endorsed by the Defendants' marketing company, Virality. The Journal's analysis demonstrated that:

a. 70% of the videos showed the creators placing a bet;

b. Video bets were placed in the aggregate amount of $1.9 million;

c. 118 of the videos depicted creators winning almost $900,000; and

d. None of the video bets were real.

96. Defendants reportedly exert substantial control over the videos, such as sending creators guidance on what to say and what format to use. A common format is to lead with a question expressing disbelief, such as "bro, what?" or "am I missing something?" with a shot of a simulated Polymarket platform on which the creator "places a bet," with confetti exploding from the transaction button.

97. Once finished, the videos are sent to Defendants for review, and Defendants may ask for the videos to be reshot.

98. Defendants pay content creators to create the impression that winnings are easy, and in fact, creators frequently use the term "free" to suggest the bets will deliver free monetary returns. For example, of the 1,105 videos analyzed by the *Wall Street Journal*, nearly a quarter used the word "free," sometimes explicitly in connection with high dollar bets.




**GRAPHIC D**

99. Content creators fake not just their bets, but also their wins. For example, the 118 videos described above, in paragraph 95(c), depicted content creators reacting to events suggesting they had won their trades. But according to the *Wall Street Journal* analysis, the bets depicted in these 118 videos would not have resulted in $900,000 in wins – they would have led to more than $166,000 in losses.

100. The losses are more consistent with the experiences of Defendants' typical users. An academic study published in June found that the top 1% of users captured 76.5% of profits, and that about 69% of all users ended up with a loss. An analysis by the *Wall Street Journal* reached a similar conclusion and attributed this to the fact that a small number of sophisticated professionals (including firms using massive data streams) are profiting from Defendants' platforms at the expense of typical consumers.

### C. *Defendants Use "Clipping" to Secretly Manufacture Virality on Social Media*

101. After Defendants pay influencers to make fake betting videos to advertise their platforms, they use a process called "clipping" to push their undisclosed advertisements to millions of people via social media.

102. Clippers make short ad videos using content that Defendants provide. This content includes online streaming videos of celebrity influencers, in which the influencers discuss Polymarket or place bets on one of Defendants' platforms.

103. Defendants' library of influencer content includes materials from many influencers who are known to target young audience demographics, such as Adin Ross, Logan Paul, Clavicular, ConnorSinann, Jacob Nachinson, and NinaDrama to name just a few. Adin Ross, for example, is a 25-year-old celebrity influencer with millions of followers. He reportedly has a multi-million dollar deal with Defendants and devotes about half an hour per week on his livestream to scrolling the site and discussing possible trades.

104. The clippers who repost content can make videos go viral, thus expanding Defendants' reach into the world of social media users quite substantially. For example, a recent *Wall Street Journal* investigative report showed how a video that received just 151 page views on its own skyrocketed to 2.4 million views following the clipping campaign.

105. To engage with clippers who can make the influencer content go viral, Defendants have spent hundreds of thousands of dollars on a digital marketplace called "Whop." Whop recruits people to create fake accounts, make clips of Defendants' ads, and promote these clips on social media using the fake accounts. Defendants state that through this process, they are seeking virality for "authentic, native-feeling clips." Their purpose is to secretly promote Defendants' deceptive advertising to a wide array of U.S. consumers, including college-aged consumers.

106. This image shows the home page of one of Defendants' campaigns on the Whop marketplace:




**GRAPHIC E**

107. According to Defendants, people who join this campaign and create clips to disseminate on social media can get paid $1 per 1000 views:




**GRAPHIC F**

108. As shown below, Defendants go on to specify that one requirement for this campaign is that in order to be paid, the clipper must prove that the people who view the clips on social media are: “60% + USA (we want Only USA)”.

109. Defendants’ marketing firm, Virality, has reportedly instructed clippers not to use the term “Polymarket” in the account name, and even to avoid the use of the prefix “poly,” as it would violate their guidelines.

110. Defendants actively discourage clippers from disclosing the clip is an ad. Defendants instruct clippers: “Content must feel natural and native to the platform”. They double down by stating “Do NOT make the videos feel like ads or promotions”. Defendants state that “Strong hooks are mandatory” and that “Strong engagement pages will be prioritized”.

**POLYMARKET x VIRALITY — CELEBRITY CLIPPING**

---

**Rules**
Platforms: TikTok, Instagram Reels
Audience: 60%+ USA (we want Only USA)
English content only
Only use clips from the provided Drive folder
Original edits only — no direct reposting from other creator pages
No low-quality/slop content
No fake analytics or botted views
Strong hooks are mandatory
Content must feel natural and native to the platform
Do NOT make the videos feel like ads or promotions
Strong engagement pages will be prioritized
Keep posts live for at least 30 days

---

**Content Style**
This is a celebrity clipping campaign focused on creating viral short-form content using clips from the provided Drive folder.

---

**GRAPHIC G**

111. Defendants then give more instruction on how to "make the content feel organic while maximizing watch time and retention":

**Recommended Editing Style:**
- Fast-paced cuts
- Big hooks in the first 1–2 seconds
- Clean subtitles/captions
- Zoom-ins and movement for retention
- Native TikTok/Reels/Shorts editing style
- Keep videos smooth, simple, and engaging

The goal is to make the content feel organic while maximizing watch time and retention.

**GRAPHIC H**

112. Next, Defendants direct creators to create a "realistic" profile that feels "authentic and trustworthy":

**Account Setup**
- Create or use a strong engagement page
- No username requirements
- Use a realistic profile setup
- High-quality profile picture recommended
- Bio should relate to prediction markets, forecasting, sports betting, market news, finance, or trending discussions
- Your page should feel authentic and trustworthy

**GRAPHIC I**

113. Once the creator has set up a "realistic profile," Defendants instruct them on how to deceive the social media algorithm and consumers into believing that they are normal users who post organic content rather than paid advertisements. Defendants mandate that creators do this through a "warmup" process for their newly created social media account:

**Warmup Process**

**Day 1**
- Scroll normally on the platform
- Do not search anything
- Act like a normal user

**Day 2**
- Search your niche naturally
- Engage with related content
- Continue normal scrolling

**Day 3**
- Fully engage with your niche
- Follow similar pages
- Continue building account activity

**GRAPHIC J**

114. After clippers have spent three days manipulating their accounts to make them look like organic accounts, Defendants instruct them to "[s]tart posting consistently" and "[e]ngage at least 15 minutes daily" to maximize their reach with consumers.

**After Day 3**
- Start posting consistently
- Engage at least 15 minutes daily before and after posting

**Skipping warmup = weak reach.**

**GRAPHIC K**

115. Elsewhere on Defendants' pages within the Whop marketplace, Defendants provide advice about maximizing engagement with the ads. They advise clippers to make "Content that feels organic – not like an ad":




**GRAPHIC L**

116. Clippers may also join a discord group called "virality coaching" where they find advice about Defendants' clipping campaigns, which echoes the tips listed in Graphic H. The Discord materials also lay out the "main goal" of the clipping campaign, which is that "[e]very second should give viewers a reason to keep watching" Defendants' advertisements.




**GRAPHIC M**

117. Clippers may also join a discord group called "Polymarket Clipping," which includes more than five thousand people. There, the clippers are instructed about how to "move forward with the campaign" so that they'll "make bags."

118. The fake organic content created through the clipping scheme does appear to drive extensive exposure to consumers on social media. For example, a single one of Defendants'

campaigns on the Whop marketplace showed that Defendants had paid out $8,892, which corresponded to 4,700 submissions and 9.1 million total views.

**D. *Defendants Aggressively Target Students on College Campuses***

119. In addition to hiring college students to make videos, Defendants attempt to reach college-aged individuals through marketing on college campuses.

120. Defendants have collaborated with student organizations at universities nationwide to increase undisclosed endorser advertisements on college campuses.

121. For example, Defendants have worked with a company called CampusGTM that pairs Defendants with college students who get "paid to run real campaigns" on behalf of Defendants.

122. According to CampusGTM, the "ideal candidates" to run these campaigns are: student founders and entrepreneurs, Greek life leaders, hackathon organizers, content creators and influencers, computer science club officers, and student government leaders. These students can earn between $500 and $2,000 per campaign to promote the Polymarket platforms to their peers.

123. Defendants have also offered to pay fraternities directly in exchange for signing up users. Defendants' representatives have reached out to fraternity leadership with messages such as the following:

a. January 20, 2026: "We're moving partnerships start dates to Feb. 1 so everything lines up with all the big Super Bowl moments, which should mean way more attention, downloads, and money for your chapter. To match that upside, we're increasing the payout to $15 per user for chapters that shift their start date."

b. February 24, 2026: "We want to make sure everything runs smooth before you blast it out to your network—so we're warming up your code so you can get comfortable with the app and dashboard prior to going live. Use the details below to activate up to 10 people …"

c. February 24, 2026: "...just FYI, [another fraternity] is also starting on March 1st so yea, will be fun [to see] who has the most traction on campus!

Remember that you can get creative, don't limit that to just your chapter, but use the chapter to spread to the whole school."

d. March 3, 2026: "We're offering $150 total to [the fraternity] (to cover food/drinks) … in exchange for a 15-minute virtual slot during one of your March chapter meetings. The session itself is structured to be high-value and interactive: short discussion on Polymarket and prediction markets; open Q&A with your members; overview of the Polymarket x [Fraternity] chapter partnership opportunity $$; presentation of the Polymarket Ambassador program—an individual role reserved exclusively for members of your organization."

124. In another example, Defendants reportedly invited a delegation of fraternity brothers from Columbia University's Sigma Phi Epsilon chapter to visit the company's office in New York City on November 16, 2025. Around 20 students attended the gathering, which also included Polymarket's CEO, Defendant Coplan. Defendants gave the students pizza and wings along with $10 each to use on Defendants' platforms. Defendants later sent the students a wooden plaque recognizing them as "the first Polymarket Pledge Class."

125. Defendants also offered a deal to the fraternity, stating that each time someone created an account on Defendants' platforms using the fraternity's referral code, $10 in cash would go to the fraternity and the new account would be funded with $10. The chapter reportedly earned $30,510 in two weeks, some of which was used to throw a party.

126. Defendants have also reached out to other fraternities and university social clubs, offering company-branded beer pong cups and up to $1,000 for parties. For example, a club named Blockchain at Berkeley accepted the merchandise and also ran a hackathon sponsored by Defendants, during which the students reportedly built a financial product related to Polymarket contracts.

**E. *Defendants Use Unfair Tactics to Promote Their Platforms to College-Aged Users***

127. Defendants systematically promote to young Americans the opportunity to place bets on the Internet-enabled websites and Apps Defendants developed and operate.

128. Defendants have used manipulative forms of advertising specifically targeted to college-aged Americans to promote their platforms, while obscuring the risk of losing money.

129. Specifically, Defendants' practice of orchestrating massive social media campaigns using simulated Polymarket sites and college-aged content creators, while concealing that the campaigns are paid advertising, has created the impression that placing bets on Defendants' platforms is a safe and easy way to make money.

130. College-aged consumers have been influenced by these social media campaigns and have suffered financial injury by placing trades on Defendants' platforms. As described below, research suggests that some have suffered further harms by falling prey to a gambling addiction.

131. These injuries are unavoidable by consumers, who have no reasonable ability to detect that the social media videos and clips are paid advertising or that the videos depict false bets on a false platform.

132. The injuries are also not outweighed by countervailing benefits to consumers or competition. There is no benefit to deceptive advertising. In fact, the societal benefit of any intrusive social media advertising of Defendants' platforms to college-aged and younger consumers is unclear at best.

133. As a starting point, gambling is itself associated with certain harms. A 2025 poll by the Siena Research Institute found that among online sports bettors, 20 percent said they lost money they could not afford to lose and 52 percent reported chasing losses – continuing to gamble in an attempt to win back money already lost. Research has indicated that access to gambling displaces

saving and investment, and that legalization of gambling causes a persistent deterioration in the financial stability of vulnerable households.

134. Harms from gambling *addiction* can be much more extreme. A common conceptual framework for these harms – the Langham framework – groups them into seven categories: financial harm, relationship disruption, psychological distress, decrements to health, cultural harm, reduced performance of work or study, and criminal activity.

135. As a result of the potential harms associated with gambling, experts have opined that where a platform involves financial stakes, uncertain outcomes, and repeated participation, it is critical to assess the public health implications and ensure appropriate protections are in place.

136. This holds especially true for young people, who are increasingly exposed to gambling. For example, a 2026 survey found that 11% of individuals 55 and older placed a bet before the age of 21, whereas 33% of 21 to 44-year-olds did so.

137. College-aged consumers can be significantly affected due to less-developed risk evaluation and impulse control. They also tend to exhibit sensation-seeking behaviors, keen interest in novel experiences, and less mature emotional regulation skills.

138. It is thus unsurprising that gambling addictions affect college-aged individuals at a greater rate than the rest of the U.S. adult population. For example, a 2014 meta-analysis estimated that about 10% of college students have a gambling problem, compared with 2-5% of people generally.

139. College-aged individuals today have grown up in an online atmosphere that is permeated with social media engagement.

140. The impact of social media on teens is widely documented, including the influence on their behaviors and their psychological well-being.

141. More and more, social scientists studying the impact of social media on problematic behaviors are sounding the alarm on gaming, gambling, and other betting offers to kids and teens.

142. For example a study released this year demonstrates how social media influences the gambling behaviors of boys. Common Sense Media conducted a nationally representative survey of over 1,000 boys aged 11 to 17 across the United States, and found that 45% of boys who gambled reported viewing gambling videos or streams online. "While 14% report actively searching for gambling content or following accounts that post about it, most exposure is passive: 59% say the content 'just started showing up' in their feed, and 24% encountered it through peer sharing." *See* Michael B. Robb and Supreet Mann, "Betting on Boys: Understanding Gambling Among Adolescent Boys," Common Sense Media (Jan. 29, 2026).

143. Defendants' use of popular influencers and manufactured virality is savvy. The Common Sense Media survey found that social networks were highly persuasive in encouraging young men to try betting platforms – 84% of boys whose friends "mostly or all" gambled reported gambling themselves, compared with just 17% of those with no gambling friends.

144. Finally, Common Sense Media found that boys who watched gambling content online "sometimes or often" were more likely to overspend; 28% said they spent more than planned, compared with 5% of nonviewers. Viewers of online gambling content were also more likely to list the following as motivations for gambling: winning money (41% vs. 18% of nonviewers), friends are gambling (26% vs. 5%), and influencers (14% vs. 1%).

145. To summarize, Defendants aimed to attract young people to place bets on their platforms using a method likely to be effective: showing them social media videos of popular and respected young people enjoying a Polymarket platform. But rather than pursue this goal lawfully,

Defendants used many layers of manipulation to trick college-aged consumers, who suffered significant harms as a result. Consumers could not avoid Defendants' tactics, and these tactics served no beneficial purpose except to unfairly boost Defendants' market share as compared with any company that did opt to follow bedrock advertising laws.

## LAW VIOLATIONS

146. Defendants have violated the CPPA by:

A. "represent[ing] that goods or services have . . . characteristics . . . that they do not have";

B. "represent[ing] that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are of another";

C. "misrepresent[ing] as to a material fact which has a tendency to mislead";

D. "fail[ing] to state a material fact if such failure tends to mislead";

E. "us[ing] innuendo or ambiguity as to a material fact, which has a tendency to mislead";

F. "advertis[ing] . . . goods or services . . . without the intent to sell them as advertised;" and/or

G. otherwise "engag[ing] in an unfair or deceptive trade practice."

D.C. Code § 28-3904(a), (d), (e), (f), (f-1), (h).

## COUNT I

### Deceptive Marketing of the Polymarket Platforms

147. Paragraphs 10 through 145 are incorporated as if set forth herein.

148. In numerous instances, in connection with the advertising, marketing, or promotion of the Polymarket platforms, Defendants have represented, directly or indirectly, expressly or by implication that:

A. Content creators and clippers are disinterested consumers posting authentic experiences;

B. Content creators are typical of traders on Defendants' platforms;

C. Content creators have placed genuine trades on Defendants' platforms;

D. Consumers are likely to make money trading on Defendants' platforms.

149. The representations set forth in Paragraph 148 were false or misleading and constitute violations of the D.C. CPPA.

## COUNT II

### Deceptive Failure to Disclose Material Connection

150. Paragraphs 10 through 145 are incorporated as if set forth herein.

151. In connection with the marketing, advertising, promotion and offering for sale of trades on the Polymarket platforms, Defendants have represented directly or indirectly, expressly or by implication, that social media posts by influencers and content creators reflected the true experiences of individuals who used the Polymarket platforms.

152. In numerous instances in which Defendants have made the representation in paragraph 151, Defendants have failed to disclose that the influencers and content creators were paid to endorse or advertise Defendants' prediction market platforms. This fact would be material to consumers in evaluating the risks of using Defendants' platforms.

153. Defendants' failure to disclose the material information identified in paragraph 152, in light of the representation in paragraph 151, is a deceptive act or practice in violation of the D.C. CPPA.

## COUNT III

**Unfair Promotion of the Polymarket Platforms to College-aged Americans**

154. Paragraphs 10 through 145 are incorporated as if set forth herein.

155. Defendants have promoted and offered a gambling opportunity and have specifically targeted college-aged Americans. Defendants have promoted their gambling opportunity using manipulative forms of advertising that obscure the risk of losing money.

156. Defendants' acts or practices have caused or are likely to cause substantial injury to consumers that those consumers could not themselves reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

157. Defendants' acts or practices constitute unfair acts or practices in violation of the D.C. CPPA.

## CONSUMER INJURY

158. District of Columbia residents have suffered and will continue to suffer substantial monetary losses as a result of Defendants' violations of the CPPA. In addition, Defendants have been unjustly enriched as result of their unlawful acts and practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## REMEDY

159. NACA seeks, on behalf of and for the benefit of D.C. consumers, a declaratory judgment stating that Defendants' conduct described herein violates the CPPA; equitable relief including equitable restitution, disgorgement of profits, and a permanent injunction against Defendants' use of the unlawful trade practices described herein; and its reasonable attorneys' fees and costs of suit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. A declaratory judgment;
2. Equitable relief including disgorgement of all profits and money unlawfully obtained and financial restitution to all harmed consumers in D.C.;
3. Attorneys' fees and costs of suit, including costs of notice, administration, and expert fees;
4. A permanent injunction prohibiting Defendants from continuing to violate the D.C. CPPA; and
5. Such other legal or equitable relief, including injunctive or declaratory relief, as the Court may deem appropriate.

**Plaintiff demands a trial by jury of all issues so triable.**

Dated: June 26, 2026

Respectfully submitted,

**VACA DAFFAN LLP**

/s/ Kathleen Daffan
Kathleen Daffan (DC Bar No. 991729)
Monica Vaca (*pro hac vice* to be filed)
VACA DAFFAN LLP
1717 Pennsylvania Ave. NW, Suite 1025
Washington, DC 20006
Phone: (202) 240-7040
kati@vacadaffanlaw.com

*Attorneys for Plaintiff National Association of Consumer Advocates, Inc.*

# EXHIBIT B

Sterlington

August 12, 2026

***Via Electronic Mail***

The Honorable Robert D. Okun
Superior Court of the District of Columbia
Civil Division, Courtroom 518
500 Indiana Avenue, N.W.
Washington, D.C. 20001

**Re: *Moeller v. Blockratize, Inc., et al.*, No. 2026-CAB-004615 — Notice of Related Case Pursuant to Super. Ct. Civ. R. 40-I(f)(2)(B)**

Dear Judge Okun,

I write pursuant to Superior Court Civil Rule 40-I(f)(2)(B) to advise the Court of a related case. I am counsel of record for the plaintiff in *Moeller v. Blockratize, Inc., et al.*, No. 2026-CAB-004615. This letter is submitted to satisfy the notification requirement of Rule 40-I(f)(2)(B).

*National Association of Consumer Advocates, Inc. v. Blockratize, Inc., et al.*, No. 2026-CAB-004388 (Hon. Maribeth Raffinan), was filed June 26, 2026 and remains pending on the merits. It is an action brought under the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.*, by a public interest organization pursuant to D.C. Code § 28-3905(k)(1)(D). Each of the three defendants in *Moeller*—Blockratize, Inc., Adventure One QSS, Inc., and QCX LLC—is a defendant in *National Association of Consumer Advocates*, which names those entities along with QC Clearing LLC, QC Tech LLC, Shayne Coplan, and Matthew Modabber.

Though there are differences between the parties, theories, and likely defenses, the cases appear related within the meaning of Rule 40-I(f)(1)(B) and (C). Both arise from the same social media marketing campaign promoting the Polymarket platforms: undisclosed paid content creator videos in which trades are alleged to have been staged on simulated versions of the Polymarket website and winnings fabricated. *National Association of Consumer Advocates* is the earlier-filed of the two.

Sterlington

For the Court's convenience, I enclose the *National Association of Consumer Advocates* complaint. A copy of this letter and its enclosures is being provided to Judge Raffinan and to all counsel of record in both matters.

Respectfully,

*Edward W. Ciolko*

Edward W. Ciolko

cc: The Honorable Maribeth Raffinan
Kathleen Bliss Daffan, Esq.
Monica Vaca, Esq.
Avi Perry, Esq.
David M. Zinn, Esq.

eFiled
8/19/2026 11:07:33 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **PHILIP MOELLER,**<br>5106 Cathedral Avenue NW<br>Washington, DC, 20016<br><br>*on behalf of himself and all others similarly situated,*<br><br>*Plaintiff,* | **Case No. 2026-CAB-004615** |
| v. | Hon. Robert D. Okun |
| **BLOCKRATIZE, INC. d/b/a POLYMARKET,**<br>New York, New York<br>**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**<br>1280 Lexington Avenue, Suite 1448,<br>New York, New York 10028<br>**QCX LLC d/b/a POLYMARKET US,**<br>7251 W. Palmetto Park Road, Suite 102,<br>Boca Raton, Florida 33433<br><br>*Defendants.* | **DEFENDANT ADVENTURE ONE QSS, INC.'S RULE 7.1 DISCLOSURE STATEMENT** |

Pursuant to Local Rule 7.1, Defendant Adventure One QSS Inc. d/b/a Polymarket ("Adventure One QSS") hereby states that its sole parent is ACTA QSS, Inc. No publicly held corporation owns 10% or more of Adventure One QSS's stock.

Dated: August 19, 2026

*/s/ Avi Perry*
Avi Perry (DC Bar No. 90023480)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
aviperry@quinnemanuel.com

Nicolas G. Keller (DC Bar No. 90024950)
QUINN EMANUEL

URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
nicolaskeller@quinnemanuel.com

*Attorneys for Defendants*

eFiled
8/19/2026 11:07:33 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PHILIP MOELLER,**
5106 Cathedral Avenue NW
Washington, DC, 20016

*on behalf of himself and all others similarly situated,*

*Plaintiff,*

v.

**BLOCKRATIZE, INC. d/b/a POLYMARKET,**
New York, New York
**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**
1280 Lexington Avenue, Suite 1448,
New York, New York 10028
**QCX LLC d/b/a POLYMARKET US,**
7251 W. Palmetto Park Road, Suite 102,
Boca Raton, Florida 33433

*Defendants.*

**Case No. 2026-CAB-004615**

Hon. Robert D. Okun

**DEFENDANT BLOCKRATIZE, INC.'S RULE 7.1 DISCLOSURE STATEMENT**

Pursuant to Local Rule 7.1, Defendant Blockratize Inc. d/b/a Polymarket ("Blockratize") hereby states that Blockratize has no parent corporation and that Intercontinental Exchange, Inc. is a publicly traded company owning 10% or more of Blockratize's stock.

Dated: August 19, 2026

*/s/ Avi Perry*
Avi Perry (DC Bar No. 90023480)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
aviperry@quinnemanuel.com

Nicolas G. Keller (DC Bar No. 90024950)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016

Telephone: (212) 849-7000
nicolaskeller@quinnemanuel.com

*Attorneys for Defendants*

eFiled
8/19/2026 11:07:33 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

**PHILIP MOELLER,**
5106 Cathedral Avenue NW
Washington, DC, 20016

*on behalf of himself and all others similarly situated,*

*Plaintiff,*

v.

**BLOCKRATIZE, INC. d/b/a POLYMARKET,**
New York, New York
**ADVENTURE ONE QSS, INC. d/b/a POLYMARKET,**
1280 Lexington Avenue, Suite 1448,
New York, New York 10028
**QCX LLC d/b/a POLYMARKET US,**
7251 W. Palmetto Park Road, Suite 102,
Boca Raton, Florida 33433

*Defendants.*

**Case No. 2026-CAB-004615**

Hon. Robert D. Okun

**DEFENDANT QCX LLC'S RULE 7.1 DISCLOSURE STATEMENT**

Pursuant to Local Rule 7.1, Defendant QCX LLC d/b/a Polymarket US ("QCX") hereby states that its immediate parent is QCL Quad Code USA Corporation and its ultimate parent is Blockratize Inc. No publicly held corporation owns 10% or more of QCX's stock.

Dated: August 19, 2026

*/s/ Avi Perry*
Avi Perry (DC Bar No. 90023480)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
Telephone: (202) 538-8000
aviperry@quinnemanuel.com

Nicolas G. Keller (DC Bar No. 90024950)
QUINN EMANUEL
URQUHART & SULLIVAN, LLP

295 5th Avenue, 9th Floor
New York, New York 10016
Telephone: (212) 849-7000
nicolaskeller@quinnemanuel.com

*Attorneys for Defendants*

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Blockratize, Inc d/b/a Polymarket
No Known Address

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

**To:** Blockratize, Inc d/b/a Polymarket **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Adventure One QSS, Inc d/b/a Polymarket
1280 Lexington Avenue Suite 1448
New York NY 10028

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

**To:** Adventure One QSS, Inc d/b/a **Case Number:** 2026-CAB-004615

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

QCX LLC d/b/a Polymarket US
7251 W Palmetto Park RD STE 102
Boca Raton FL 33433

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

**To:** QCX LLC d/b/a Polymarket US **Case Number:** 2026-CAB-004615

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Edward W Ciolko
1280 Tressler Drive
Fort Washington PA 19034

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

**To:** Edward W Ciolko **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Julian A Jiggetts
2001 M STREET NW
FLOOR 10
WASHINGTON DC 20036

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moller v. Blockratize, Inc d/b/a Polymarket et al.

**To:** Julian A Jiggetts **Case Number:** 2026-CAB-004615

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Avi Perry
555 13th Street NW
Suite 600
Washington DC 20001

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Avi Perry **Case Number:** 2026-CAB-004615

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Nicolas Giles Keller
295 5th Avenue 9th Floor
New York NY 10016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Nicolas Giles Keller **Case Number:** 2026-CAB-004615

## NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **10/02/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Nicolas Giles Keller
295 5th Avenue 9th Floor
New York NY 10016

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Nicolas Giles Keller **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **11/20/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Avi Perry
555 13th Street NW
Suite 600
Washington DC 20001

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Avi Perry **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **11/20/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Julian A Jiggetts
2001 M STREET NW
FLOOR 10
WASHINGTON DC 20036

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Julian A Jiggetts **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **11/20/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።

Superior Court of the District of Columbia
Civil Division - Civil Actions Branch
500 Indiana Ave NW, Room 5000, Washington DC 20001
202-879-1133 | www.dccourts.gov

First Class Mail
U. S. Postage Paid
Washington, D.C.
Permit No. 1726

Edward W Ciolko
1280 Tressler Drive
Fort Washington PA 19034

You are named in a lawsuit filed in the Superior Court of the District of Columbia. If you cannot appear at the hearing, please contact the Clerk's Office immediately for more information. If Plaintiff does not participate, the case may be dismissed. If Defendant does not participate, default or judgment may be entered.

For case information, please contact the Civil Actions Branch Clerk's Office by phone at 202-879-1133 or by live chat at https://www.dccourts.gov/services/civil-matters/requesting-over-10k.

To access your case information online, please visit www.dccourts.gov/services/cases-online.

**Case Caption:** Philip Moeller v. Blockratize, Inc et al.

**To:** Edward W Ciolko **Case Number:** 2026-CAB-004615

**NOTICE OF REMOTE INITIAL SCHEDULING CONFERENCE**

Your case is scheduled for a(n) **Remote Initial Scheduling Conference** on **11/20/2026** at **9:30 AM** in **Remote Courtroom 518**.

The remote hearing will be held via Webex. To join the hearing, follow the below instructions.

**To Join by Computer, Tablet, or Smartphone:**

1) Copy and Paste or Type the link into a web browser and enter the Webex Meeting ID listed below.
   Link: dccourts.webex.com/meet/ctb518
   Meeting ID: 129 685 3445
2) Click "**Join Meeting**". You may be placed in the lobby until the courtroom clerk gives you access to the hearing.

**OR To Join by Phone:**

1) Call 202-860-2110 (local) or 844-992-4726 (toll-free)
   Enter the Webex Meeting ID shown above followed by "##"

**Resources and Contact Information:**

1) For best practices on how to participate in Webex Meetings, click here www.webex.com/learn/best-practices.html.
2) For technical issues or questions, call the Information Technology Division at 202-879-1928 and select option 2.
3) For case questions, call the Civil Actions Branch at 202-879-1133.
4) To change your method of hearing participation, visit www.dccourts.gov/hearing-information for instructions and forms.

**Accessibility and Language Access Information for Superior Court**

**Persons with Disabilities:**

If you have a disability as defined by the American Disabilities Act (ADA) and you require an accommodation, please call (202) 879-1700 or email ADACoordinator@dcsc.gov. The D.C. Courts does not provide transportation service.

**Interpreting and Translation Services**:

The D.C. Courts offers free language access services to people having business with the court who are deaf or who are non-English speakers. Parties to a case may request free translations of court orders and other court documents. To ask for an interpreter or translation, please contact the Clerk's Office at the telephone number at the top of the first page of this notice. For more information, visit https://www.dccourts.gov/language-access.

Language access is important to the D.C. Courts. You can provide feedback on language services by visiting https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**Servicios de interpretación y traducción:**

Los Tribunales del Distrito de Columbia ofrecen servicios gratuitos de acceso al idioma a las personas sordas o que no hablan inglés que tienen asuntos que atender en el tribunal. Las partes de un caso pueden solicitar traducciones gratuitas de las órdenes judiciales y otros documentos del tribunal. Para solicitar un intérprete o una traducción, póngase en contacto con la Secretaría en el número de teléfono que figura en la parte superior de la primera página de este anuncio. Para más información, visite https://www.dccourts.gov/language-access.

El acceso al idioma es importante para los Tribunales del Distrito de Columbia. Puede dar su opinión sobre los servicios de idiomas visitando https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access.

**የቃልና የጽሑፍ ትርጓሜ አገልግሎቶች፡**

የዲ.ሲ ፍርድ ቤቶች መስማት ለተሳናቸውና የእንግሊዝኛ ቋንቋ ተናጋሪ ላልሆኑ በፍርድ ቤቱ ጉዳይ ላላቸው ሰዎች ነጻ የቋንቋ ተደራሽነት አገልግሎቶች ያቀርባል። ተከራካሪ ወገኖች የፍርድ ቤት ትእዛዞችና ሌሎች የፍርድ ቤት ሰነዶች በነጻ እንዲተረጎምላቸው መጠየቅ ይችላሉ። አስተርጓሚ ወይም የጽሑፍ ትርጉም ለመጠየቅ፣ እባክዎን በዚህ ደብዳቤ የመጀመሪያ ገጽ አናት ላይ በተቀመጠው ስልክ ቁጥር የፍርድ ቤቱን መዝገብ ቤት ቢሮን ያናጋግሩ። ለበለጠ መረጃ https://www.dccourts.gov/language-access ላይ ይጎብኙ።

የቋንቋ ተደራሽነት ለዲ.ሲ. ፍርድ ቤቶች አስፈላጊ ነው። የቋንቋ አገልግሎቶች በተመለከተ አስተያየትዎን https://www.dccourts.gov/services/information-and-resources/interpreting-services#language-access በመጎብኘት መስጠት ይችላሉ።